# WHEELING.

Johnson *v.* Young, Carson & Bryant *et al.*

Submitted June 11, 1880—Decided November 18, 1882.

(*Snyder, Judge, Absent.)

1. When it does not appear by the record that the appellant made objection in the court below to the filing of exceptions by an appellee or appellees to the report of a commissioner or to the consideration of such exceptions by said court upon the ground that such exceptions were not filed within proper time, objection to the filing of such exceptions or the consideration thereof by the Appellate Court will not be entertained. (p. 656.)

2. A surety is defined as a person who being liable to pay a debt or perform an obligation, is entitled, if it is enforced against him, to be indemnified by some other person who ought himself to have made payment or performance before the surety was compelled to do so; and the relation is fixed entirely by the arrangements and equities between the debtors or obligers and may or may not be known to the creditors. (p. 657.)

3. Where one of two co-partners purchases the interest of the other in the partnership property, &c., and assumes and agrees to pay the partnership debts as to such debts the former becomes in equity the principal debtor and the latter a surety. (p. 657.)

4. The purchaser of a tract of land on which there is the lien of a judgment against two persons one of whom is surety, where the lien of the judgment continues on the land in the hands of the purchaser, by purchasing and taking an assignment of the judgment discharges the surety *pro tanto*. (p. 665.)

5. In such case the purchaser is held to be put upon enquiry as to the equity of the surety and will be held to have had constructive notice of such equity. (p. 666.)

6. The equitable right of the surety to substitution to the lien of the creditor's judgment on the property cannot be impaired by a subsequent transaction of the principal debtor with third persons. (p. 666.)

Appeal from and *supersedeas* to certain decrees of the circuit court of the county of Wood rendered respectively, on the 22d day of January, 1879, and on the 16th day of April, 1879, in a cause in said court then pending, wherein John B.

*Cause submitted before Judge S. took his seat on the bench.

Johnson was plaintiff, and Young, Carson & Bryant and others were defendants, allowed upon the petition of said Johnson.

Hon. James M. Jackson, judge of the fifth judicial circuit, rendered the decrees appealed from.

HAYMOND, JUDGE, furnishes the following statement of the case:

On the first Monday in March, 1868, the plaintiff filed his bill of injunction against the defendants in the clerk's office of the circuit court of Wood county, in which he alleges substantially as follows, viz.: that in the year of 18—, he and John W. Horner entered into articles of co-partnership in the business of merchandising in the town of Parkersburg, in said county of Wood; and that as capital in said business he (plaintiff) was to pay into said partnership the sum of two thousand dollars, which was duly paid into the said capital stock; and that he should share equally with said Horner the profits of said business; that said business was conducted mainly by the said J. W. Horner, who made the greater part if not all, of the purchases of goods in replenishing their stock from time to time, and said Horner contracted the most part, if not all, the liabilities of said co-partnership, and had general control of the financial matters of the firm; that said co-partnership was mutually dissolved on the 3d day of September, 1857, by agreement, sealed with the seals of plaintiff and said Horner, whereby said Horner took the stock of goods, &c., of the said firm of Horner & Johnson and agreed to pay the plaintiff the sum of one thousand dollars in the manner stated in said agreement, a copy of which is alleged to be filed marked No. 1; that some time after the dissolution aforesaid E. B. Long and J. C. Long partners under the firm name of E. B. Long & Co., sued plaintiff and said Horner in the county court of Wood county and obtained judgment against them at the August term thereof, 1858, for the sum of two hundred and seventy-eight dollars and fifty-three cents, a copy of which is alleged to be filed as an exhibit marked No. 2. By this copy it appears that said judgment is for the sum of two hundred and seventy-eight

dollars and fifty-three cents, with interest on one hundred and thirty-nine dollars and twenty-six and one-half cents, part thereof from the 12th day of May, 1858, and one hundred and thirty-nine dollars and twenty-six and one-half cents residue from the 12th day of June, 1858, and the costs; but this judgment is subject to a credit of one hundred and twenty-five dollars paid by Horner to Amiss, attorney, 11th September, 1865, and that a *fi. fa.* issued on this judgment the 18th day of January, 1867, returnable to March rules, 1867, and was returned by the sheriff: "Levied on thirty head of cattle the property of John B. Johnson, and collection of the execution stayed by injunction."

He also alleges, that Charles T. Taylor, William L. Foster, and John Beaty, partners under the firm name of Taylor, Foster & Co., sued plaintiff and said Horner upon a claim and obtained a judgment thereon, a copy of which judgment is also alleged to be filed as exhibit No. 3; that Samuel Straus, Sleon Hartman, Nathan Hofflin and T. W. Goodloe by their firm name of Hartman, Hofflin & Co. also sued plaintiff, and said Horner for a claim and at the October term of the county court, 1858, of said county, obtained a judgment against them as partners, &c., for the sum of three hundred and thirty-six dollars and sixty-three cents with interest thereon from the 15th day of April, 1858, until paid, and costs, eight hundred and nine dollars; that Jeremiah Fisher (since deceased), John J. Boyd and Asbury McK. Boyd partners under the firm name of Fisher, Boyd & Bro. also sued plaintiff and said Horner and obtained a judgment in the circuit court of said county for six hundred and four dollars and fifty cents, with interest on three hundred and one dollars and fifty cents from January 3, 1858, and on three hundred and three dollars from February 2, 1858, and costs, eight dollars and sixty-five cents; that William T. Young, Washington K. Carson and William Bryant, also sued plaintiff and said Horner for a claim at the November term, 1858, of said county court and recovered a judgment against them for sixty-five dollars, with interest from the 12th day of November, 1858, until paid and costs amounting to twelve dollars and thirty-four cents.

The plaintiff charges, that at the several terms, when said

judgments were obtained as aforesaid, the said J. W. Horner had sufficient assets of the late firm of Horner & Johnson in his hands to pay off and discharge said judgments; and that as he had assumed to pay all the liabilities of said firm, he had personal individual estate to pay the whole of said liabilities, and largely in excess thereof. The plaintiff alleges, that he has been informed and believes; and therefore charges, that the store house containing a large stock of goods, wares and merchandise, marketable and valuable, in and with which the said Horner there was doing business as aforesaid in said town of Parkersburg, invoiced at upwards of four thousand dollars, were levied on by Amiss & Loomis, attorneys for some of said judgment creditors, the store house closed, and the goods, &c., seized and sold upon a pretense of satisfying said judgments; that so far as he (plaintiff) has ascertained or can learn from any source whatever, no part of said goods, wares, &c., were ever applied to the discharge of said judgments, but said goods and the proceeds thereof were and have been misapplied, squandered and wasted, and he (plaintiff) and said Horner have derived no benefit therefrom, and that by reason thereof he (plaintiff) has been defrauded and injured; that no return of any kind, can be found in the proper offices, and no credit appears to have ever been given plaintiff and said Horner on said judgments, or any execution issued thereon, for any part of the proceeds of the sale of said store-goods, &c. The plaintiff also charges that the said Horner, long before either of the said suits were brought, placed in the hands of said Amiss & Loomis (then the attorneys having the said claims for collection) a large amount of claims, notes and accounts, as collaterals, which when collected, were to be applied to the payment of said debts, upon which judgments were afterwards obtained; that since said Horner paid said Amiss & Loomis at various times, by himself and others, and in various ways, large sums of money more than sufficient to discharge every cent of said partnership indebtedness which will more fully appear by reference to copies of said receipts of said Amiss & Loomis filed with the bill as part thereof. The said receipts are copied into the bill, the first of which states that Amiss & Loomis received of John W. Horner March 2, sundry notes

for collection as collateral the proceeds arising thereon to be applied to the payment of certain claims in favor of Fisher, Boyd & Bro. against said Horner which Amiss & Loomis have for collection after deducting fee and five per cent. commission. The notes received are specified in the receipt, and exclusive of interest amount to one hundred and thirty-nine dollars and ninety-three cents. The second receipt states that Amiss & Loomis have in their hands for collection claims against J. W. Horner and Horner & Johnson in favor of Fisher, Boyd & Bro. specifying them which in the aggregate exclusive of interest amount to one thousand and eighty-eight dollars and eighty-one cents and the said receipt proceeds to state that said Horner has placed in the hands of Amiss & Loomis as collaterals, claims the proceeds of which after deducting docket fees and five per cent. commission to be applied to the payment of the above claims of one thousand and eighty-eight dollars and eighty-one cents. This receipt then proceeds to specify said claims and their several amounts which in the aggregate amount to about one thousand and six dollars and eighty-five cents.

The plaintiff further charges that the law firm of Amiss & Loomis has been dissolved, and that M. P. Amiss of that firm has the control of said business respecting said collections and that said Amiss has admitted recently that he had collected most of the collaterals given him by the said Horner as aforesaid; that after the dissolution of said firm of Horner & Johnson, the said Horner contracted debts of his own, and that a part of the assets of said firm were applied by him to the payment of his said liabilities contrary to his duty in that behalf and to the injury of plaintiff; that he is advised and believes that one J. L. Morehead, a resident of Wood county, pretends that the benefit to be had from any of the said judgments and executions has been assigned to him, and he has directed executions to be renewed on three of said judgments, to wit, on that of Young, Carson & Bryant, E. B. Long & Co. and Straus, Hartman, Hofflin & Co., and said renewed *fi. fas.* have been levied on the following property of plaintiff, viz., thirty head of stock cattle, and said sheriff has threatened to sell the same upon said executions. Said executions are copied into said bill and the

first of which is in favor of said firm of Straus, Hartman, Hofflin & Co. against said firm of Horner & Johnson for three hundred and thirty-six dollars and sixty-three cents, with interest thereon from the 15th day of April, 1858, until paid, and eight dollars and nine cents costs. This execution is dated the 24th day of August, 1865, and is returnable before the county court of said county on the first Monday of October thereafter. The second execution is in favor of said firm of E. B. Long & Co. against said firm of Horner & Johnson for the sum of two hundred and seventy-eight dollars and fifty-three cents debt with interest on one hundred and thirty-nine dollars and twenty-six and one-half cents, part thereof from the 12th day of May, 1858, and on one hundred and thirty-nine dollars and twenty-six and one-half cents residue from the 12th of June, 1858, and eight dollars and sixty-seven cents costs. This execution is dated 22d day of February, 1860, and is returnable before said county court on the first Monday of April thereafter. The third execution copied into the bill is in favor of said firm of Horner & Johnson, and is for sixty-five dollars with interest from the 12th day of November, 1858, and eleven dollars and eighteen cents costs. This execution is dated the 22d day of February, 1860, and is returnable before the judge of the circuit court of said county on the first Monday of May thereafter. From endorsements on each of said executions copied in the bill it appears that each of them were returned by the sheriff of said county, "No property found;" and that other executions had issued on each of said judgments prior thereto, and were also returned, "No property found." The plaintiff further charges that if the said Morehead has *bona fide* purchased said judgments, he did so with a full knowledge of their being satisfied; that said Horner, before the time said Morehead pretends to have purchased the same repeatedly informed Morehead that said judgments were paid off in law and equity, and that M. P. Amiss well knew the same, and that said Morehead purchased said judgments having notice that the same were satisfied; that said J. L. Morehead, M. P. Amiss and J. W. Horner have confederated for the purpose of injuring and oppressing plaintiff, and to vex and harass him with said claims which in good con-

science and equity have been paid; that the matters of said firm have become complicated with the arrangements and dealings of said Horner and Amiss; that plaintiff has no relief save in a court of equity. But so it is the said Young, Carson & Bryant, Straus, Hartman, Hofflin & Co., and E. B. Long & Co., M. P. Amiss and J. L. Morehead pretend that said judgments are still due and unpaid, whereas plaintiff charges the contrary thereof to be the truth. The plaintiff makes the following defendants to his bill, viz.: M. P. Amiss, J. L. Morehead, J. W. Horner and firms of E. B. Long & Co., Straus, Hartman, Hofflin & Co., Young, Carson & Bryant and said Geore Loomis of the said firm of Amiss & Loomis. The plaintiff prays that each of said defendants answer upon their several oaths; that especially the said M. P. Amiss answer and state how much money he received from the sale of the said store goods, &c., from the collaterals of said Horner, and from other sources to be applied to said judgments, and that said Morehead state whether he was not distinctly informed, before he made his pretended purchase of said judgments that said judgments were paid off and discharged; that an account may be taken before one of the masters of the court of the partnership affairs of said Horner and plaintiff; that in the meantime the sheriff of Wood county and said before named defendants and all others interested, their agents and attorneys, be enjoined and restrained from all further proceedings on the last-named judgments; that the injunction may be perpetual; that said judgments may be ordered to be satisfied, and the bill prays for such other and further general relief in the premises as to justice and equity appertains. On the 24th day of April, 1868, the cause was by order of said circuit court in the usual form removed to the circuit court of Ritchie county for hearing and determination and the cause was subsequently docketed in the circuit court of Ritchie county. At the September term 1868 of the circuit court of Ritchie county the defendants Young, Carson & Bryant, E. B. Long & Co., Straus, Hartman Hofflin & Co., James L. Morehead, M. P. Amiss and George Loomis tendered their answer to plaintiff's bill, and the plaintiff took time to except or reply to the same, whereupon the

defendants filed a demurrer to plaintiff's bill, for want of equity, and upon the ground that plaintiff has ample and complete remedy at law.

At December term 1869 of said Ritchie county circuit court that court overruled the said demurrer. The joint answer of said firms of Young, Carson & Bryant, E. B. Long & Co., and Straus, Hartman, Hofflin & Co., reserving all right of exception to said bill for answer state and are substantially as follows: "That they respectively and regularly obtained judgment against the late firm of Horner & Johnson; that they caused executions to be issued on said judgments which were returned "No property found;" that they were informed by their attorney M. P. Amiss one of the firm of. Amiss & Loomis that the said judgments were regularly obtained; that said Horner & Johnson especially said· Horner frequently addressed them through their ·attorney M. P. Amiss proposing and asking a compromise, and these defendants were disposed to compromise and settle and close up their old judgments, and so advised their attorney M. P. Amiss, who informed these defendants that Horner promised to cash the amount proposed, but failed so to do; and from that time up to sometime in the fall of 1866 nothing was done, until James L. Morehead, of Parkersburg, called on these defendants and informed them that he had a statement of the judgments against said Horner & Johnson of Wood county, and that he would like to purchase them, stating that some land he had purchased of one of the Horners was in some way subject to the lien of the defendants' judgments, and after consultation these defendants each by their firm names respectively, sold and assigned their judgments against said Horner & Johnson; that said Morehead paid them in cash; that they executed to. him a full and complete assignment of said judgments, and authorized him to prosecute them in their names, but at his costs for his own use and benefit, and these defendants immediately notified their said attorney M. P. Amiss of their action; that these defendants have no further interest in said judgments and have given credit upon said judgments for all payments made to them thereon prior to their said assignment to said Morehead; they deny all combination or confederation charged in the bill, &c,

The defendants Amiss & Loomis in their answer which is joint saving and reserving all right of exceptions to the plaintiff's bill substantially state and allege as follows : That the allegations and charges in said bill are erroneous and inaccurate respecting the acts and doings of these respondents in the premises; that they know not whether plaintiff's statements of his partnership transactions with his said partner Horner are true or false, and so far as they are concerned it is immaterial; that they were retained as attorneys-at-law by E. B. Long & Co., to collect their claims against said Horner & Johnson, and obtained judgment at the August term 1858, of the county court of Wood county and state that a certified copy of said judgment and the proceedings under it up to the time of plaintiff's injunction is filed with the bill and their answer marked "A" as part thereof; that they also obtained judgment in favor of Young, Carson & Bryant at the November term, 1859, of the circuit court for sixty-five dollars and costs, and allege the filing as exhibit a like copy of the judgment and proceedings; that as to the case of Straus, Hartman, Hofflin & Co., A. I. & J. S. Boreman attorneys had control of it up to June, 1865, when the same was put into these respondents' hands and allege the filing as exhibits like copies of the judgment and proceedings; they aver that the certified copies of the said judgments and statement of the different executions which issued under them, show a true statement of all credits and payments ever made upon them; that on the contrary, plaintiff has filed with his bill incomplete copies, and omitted to set forth the true executions which last issued on said judgments; they deny the allegations and charges that they seized and levied on Horner & Johnson's goods or either Horner or Johnson's at any time, or that they or either of them directed the sheriff or officers to lock up their store house in Parkersburg; but on the contrary the sheriff could heretofore find nothing on which to levy, as appears by their returns on said executions, until levied on some of Johnson's cattle, the sale of which he prevented by his bill of injuction ; that plaintiff is wholly mistaken in his charges and statements, in saying that said Horner placed in the hands of Amiss or Amiss & Loomis, a large number of claims, notes, and accounts as collaterals,

which when collected were to be applied to the payment of
said debts meaning the judgments aforesaid; that plaintiff is
mistaken in respect to these receipts, and if he will produce
them or a true copy of them, they will show he stated falsely;
and further the receipts of Amiss & Loomis show on their
face on what debts the collaterals were to be applied to-wit
on claims of Fisher, Boyd & Bro., upon which there is now
depending a chancery suit against Horner & Johnson, and
they filed said receipts in said cause, which is the proper
plan; they file certified copies of said receipts with their answer
which are the three receipts set out in plaintiff's bill and of
same purport so far as I see; they also file with their answer the
an extract from report of Commissioner Sands made in the
Fisher, Boyd & Bro. suit showing how the said collaterals
have been accounted for; they and especially M. P. Amiss
deny the charges of combination and confederation with
Horner, Morehead, or any other person to injure or harass
plaintiff; that M. P. Amiss did inform James L. Morehead
that he was attorney for some creditors, who had judgments
against Horner & Johnson that were not satisfied but re-
mained unpaid, and that said judgments were liens upon the
and he purchased of one J. Y. Horner father of J. W. Horner,
and if they were not paid suit would be brought to enforce
said liens; that defendant Amiss told said Morehead if he
would examine the records of Wood county or request the
clerk he would furnish him with copies of said judgments,
and he did obtain copies of them and he said Amiss also from
time to time urged said Horner and Johnson to pay off these
judgments, and furnished both of them with statements of
how each one stood and the balance due, so that they knew
they were not paid; that Morehead purchased these judg-
ments and had the same assigned to him for his use and
benefit in the fall of 1866, and the plaintiff so informed re-
spondent Amiss and respondent knew that Morehead after
he had purchased these judgments, informed Horner and
Johnson that he had so purchased them to prevent suit against
his own land, and Morehead informed them that he did not
wish to press them; that if they would secure them he would
also make some deduction if settled at once, but they refused
to do anything towards paying off these claims, consequent-

ly at the instance of Morehead, respondent Amiss as attorney ordered new executions to issue on the judgments and was particular to see that said judgments were credited with all payments made to the plaintiffs or respondent; that these respondents are sure and certain that the balance claimed by plaintiffs on said judgments is justly due and unpaid, and further that respondent is satisfied that the plaintiff and John W. Horner knew that they have no real defense or further set-off against said judgments; that respondents have no interest in said judgments, that respondent Amiss is still attorney in the cases for the use of Morehead, and he expects to be paid as attorney only, &c. This answer is sworn to by M. P. Amiss.

The defendant J. L. Morehead in his answer after reserving and saving the benefit of all exceptions to the bill for insufficiency, &c., states and alleges substantially as follows: that it is true that he not only pretended but in fact did purchase the judgments referred to in plaintiff's bill and paid the plaintiffs therein, and had the same assigned to him and for his use and benefit; he denies knowing that said judgments were satisfied, but in fact he knows they were unsatisfied. He states as a reason for the purchase that he some time prior to the assignment of said judgments to him, purchased a tract of land of J. Y. Horner, father of the said John W. Horner, which tract of land said J. Y. Horner had purchased of his son John, and the lien of said judgments and others attached upon said land while the said John W. Horner was the owner thereof, and in obtaining the deed for said land, and at the time the said John promised to have said liens removed off of said land, but he neglected so to do, and soon after this Amiss attorney for plaintiffs, in a portion of said judgments, threatened to enforce the liens aforesaid against this defendant's land, if said judgments were not paid. And that this defendant finding that he was likely to be harassed in a chancery suit against his land, he determined if possible to protect himself and in order to do so he went to the city of Baltimore and did purchase of the plaintiffs in said judgments the judgments aforesaid and they for value received, assigned the same to him, and this defendant immediately after he had so purchased the claims

informed said J. W. Horner what he had done and pro-
posed to compromise the same with them, or either one
of them, informing them at the same time that unless
they settled said judgments he would be compelled to
collect them by execution; that before he caused new execu-
tions to be issued on said judgments he requested said Horner
& Johnson to produce any evidence of payments they or
either of them had made upon said judgments, and that if
they were not credited already, they should be, and if they
had any set-off that should be allowed upon these judgments,
the same if proper and just should at once be allowed. But,
they produced no evidence of payments, other than those
already allowed and endorsed on executions upon said judg-
ments; that about this time the said John W. Horner pre-
tended that he had paid off these judgments but, when called
on by this defendant and M. P. Amiss, attorney for plaintiffs
in the judgments, to produce evidence of any further pay-
ments or credits that he should be allowed on said
judgments, he did not show any further payments or
credits to be allowed. And this defendant being satis-
fied that said Horner & Johnson could produce no further
credits or sets-off to said judgments, he caused executions
to issue with the consent of Amiss & Loomis co-defend-
ants. He denies all charges of fraud and confederation with
any one, to injure or embarrass either the plaintiff or said
John W. Horner, but on the contrary his object was to
relieve himself and his property from the liens aforesaid.
And being a *bona fide* purchaser of said judgments, and
having the same assigned to him for a valuable consideration
he is advised that he has the right to enforce the collection
of said judgments, that said Amiss & Loomis have no interest
in said judgments, that said M. P. Amiss, late of the law
firm of Amiss & Loomis, was the attorney for the judgment
creditors aforesaid and this defendant retained him and he is
still the attorney for this defendant and as such attorney is all
the interest he has in said judgments. And further denying all
confederation and combination charged in the bill, he prays
that the injunction be dissolved, &c. This answer is also
sworn to.

At December term 1869 of the circuit court of Ritchie

county the cause was heard upon the bill, answers of the defendants, depositions taken and exhibits filed; and the court by its decree referred the cause to K. B. Stephenson a special commissioner appointed for the purpose. First to ascertain the amount of goods and other personal property of J. W. Horner levied on and sold to satisfy the judgments named in the cause, and what was done with the assets arising from the sale of said property. Second, to ascertain the amount paid to the defendants, before suit was brought on their respective claims and also amount paid said defendants, on their respective judgments or to their attorney, or to the sheriff, on the executions from any source and how the same was applied, and also to report any and all collaterals placed by said Horner in the hands of defendants' attorneys and how the same was applied. Third, to ascertain the amount if any due from Horner & Johnson to the defendants in this cause the suit was instituted against plaintiff and said Horner together with all other matters deemed pertinent, &c., &c.

At August term 1870 of said Ritchie county circuit court the last named order was set aside, and at the December term 1870 of same court the cause was heard as before and the court referred the cause to Barna Powell special commissioner appointed for the purpose with directions to ascertain and report, first, how much if any is due the defendants in the cause, upon their judgments, from Horner & Johnson. Second, to report any matter deemed pertinent that may be required by either party touching the matters in the cause, and to hear any further evidence that may be offered by either party &c.

At the said December term 1870 of the last named court the defendant John W. Horner with leave of the court filed his answer to the plaintiff's bill, in which the said John W. Horner states and alleges substantially as follows: He admits that plaintiff and he were partners in the mercantile business and that he made all the purchases and attended to the financial part of the business, that a part of the assets of Horner & Johnson was applied to the payment of his individual debts, but without his knowledge or instructions; that he purchased the entire interest of plaintiff, in the goods and effects of the firm of Horner & Johnson, and was to pay

the liabilities of the firm.     He denies that there was any collusion between him and Amiss or any other person to injure or annoy plaintiff.     He alleges that he went on in good faith to carry out his agreement with plaintiff, and that he paid large sums of money to Amiss & Loomis and to the sheriff, and that he also placed in their hands a large amount of collaterals which they collected and were directed to pay on the firm debts of Horner & Johnson but did not; that the sheriff levied on and sold a large amount of goods belonging to respondent, to satisfy the executions named in plaintiff's bill, and that all his personal property was levied on and sold by the sheriff to satisfy said executions; that no invoice of the goods or property sold by the sheriff was ever returned to the office, and no credit was entered on any of the executions until after plaintiff filed his bill of injunction; that he was for some five or six years suffering from scrofula and about three years of the time he was confined to the house, and was totally unfit to attend to business, and really knew nothing about his business during that period, only as he learned from his papers and information derived from others; that during his sickness great advantages were taken of him; his property was sacrificed and suffered to be squandered by the attorneys; that after he recovered sufficiently to look after his business, he went to Amiss & Loomis who held the greater part of the claims against the firm of Horner & Johnson and asked them to give him a statement of how he stood, they promised to make out a statement and give it to him; that he called on them again a few days afterwards and they informed him there was about five hundred dollars back on all the claims they held on Horner & Johnson, that they would take five hundred dollars in full for all the claims, and give him twelve months to pay it in, if he would give good security; that he agreed to give them the five hundred dollars payable in twelve months, with security as a final and full settlement of all the claims in their hands against Horner & Johnson; that he sold a piece of land a few weeks thereafter, and paid the five hundred dollars to said M. P. Amiss, and that Amiss was to return the executions satisfied; that he never heard anything more about said claims until J. L. Morehead pretended he had purchased

them; that said Morehead came to him, and wanted him to join him to buy up the claims, and that a nice thing could be made out of Amiss & Loomis; that he refused to join him, and informed him that the claims were all paid off; that every word of Morehead's answer is a base misrepresentation of the facts, and that Morehead's object was to cheat and defraud him; that before and at the time he was taken sick he had a large amount of personal property, all of which was levied on and sold by the sheriff to satisfy the executions in this cause, and that had respondent been fairly dealt with he would have had a large surplus coming to him after paying off every cent the firm owed &c. This answer does not appear to have been sworn to.

Commissioner Barna Powell made and filed his report and at the April term, 1872, of the circuit court of Ritchie county a decree was entered in the cause dissolving the injunction and dismissing the bill at plaintiff's costs, and it was ordered that the papers of the cause be transmitted to the clerk of the circuit court of Wood county, and the said decree be entered upon the chancery order book of said court at the next term thereof. At the April term, 1872, of the circuit court of Wood county the court ordered the cause to be docketed in that court and in the same ordered that the last named decree be entered of record, which was done as part of the same order. From the last named order an appeal was taken to this Court by the plaintiff, John B. Johnson; and this Court on the 17th day of November, 1877, without passing on the merits of the cause reversed the said decree of the circuit court of Ritchie county rendered at the April term thereof, 1872, except the portion thereof which ordered the papers of the cause to be transmitted to the clerk of the circuit court of Wood county, and reversed the last named decree of the circuit court of Wood county, except that portion of it which ordered this cause to be docketed in the circuit court of Wood county and remanded the cause to the circuit court of Wood county, there to be proceeded with and determined according to the rules and usages governing courts of equity, &c. See *Johnson* v. *Young, Carson & Bryant,* 11 West Va. R. 673. Depositions were taken by plaintiff and defendants as

though general replications were filed to each, of the answers.

After the cause had been remanded by this Court to the circuit court of Wood county for further proceedings the cause was docketed in the circuit court of Wood county and afterwards on the 13th day of April, 1868, the death of said John W. Horner was suggested and the cause revived as to him in the name of R. E. Horner, his administrator, by his consent and the Court transferred the cause to the circuit court of Harrison county to be proceeded in, heard and determined. And afterwards in 1878 the cause was docketed in the said circuit court of Harrison county.

At September rules, 1878, the plaintiff filed an amended bill in the cause which is as follows:

" *To the Honorable the Circuit Court of Harrison County, West Va.:*

"The amended bill of *complainant* of John B. Johnson to the bill of complaint filed by him against Young, Carson son & Bryant and others, now pending in said court. Humbly complaining, your orator, John B. Johnson, respectfully shows that in March, 1868, he filed his certain bill of complaint in the circuit court of Wood county, West Va., against Young, Carson & Bryant and others, amongst other things alleging the existence of a partnership which had before that been formed between your orator and John W. Horner, deceased, which had been dissolved by mutual consent; that the firm was somewhat indebted; that Young, Carson & Bryant and others, creditors of said firm, had obtained judgments against said firm and had been almost if not entirely paid by the said firm and the said John W. Horner; that certain claims were placed in the hands of M. P. Amiss and George Loomis as attorneys of certain of the said creditors, as collaterals, by the said John W. Horner to be applied on certain of the said debts against said firm of Horner & Johnson, and that the same had not as claimed by the said Horner been paid on said debts against said firm of Horner & Johnson; that one James L. Morehead, claiming to own the said judgments against the said Horner & Johnson, had caused new executions to be issued thereon, which were levied on the property of your orator, and praying an

account of the partnership, and of the payments made on said debts, of the sums collected on said collaterals, any general relief; and also praying for an injunction which was granted by the said circuit court of Wood county, all which will fully appear by said original bill of complaint filed as aforesaid. And your orator further shows that such proceedings were had in said cause, that afterwards an order of reference was made therein and a report filed by Barna Powell, commissioner, showing fully the satisfaction of all the said executions, and that your orator was entitled to have the same perpetually enjoined, which report is now on file in this honorable court, and reference is here made to the same.

"And your orator further shows that in addition to the judgments of Young, Carson & Bryant and others, mentioned in the original bill of complaint there is a certain other judgment in favor of Fisher, Boyd & Bro. against the late firm of Horner & Johnson for the sum of six hundred and four dollars and fifty cents, with interests and costs; that in 1859 the said Fisher, Boyd & Bro. instituted a certain suit in equity in Wood county circuit court against the firm of Horner & Johnson ror the purpose of enforcing the lien of said judgment against the real estate of said Horner & Johnson and your orator, and that answers being filed by the defendants, and proofs taken, the said last named cause was referred to a certain commissioner of the circuit court of Wood county, and that Commissioner Sands made his report therein which was excepted to, and the exception being sustained, the cause was recommitted to one of the commissioners of said court, but this order has never been executed; and that at spring term, 1878, that cause and the one of your orator against said Young, Carson & Bryant and others were transferred to this honorable court for further proceedings. And your orator further shows that each of the said judgments are claimed to be wholly unsatisfied, but the contrary is the truth as your orator is hereby convinced, and as the papers and proofs in the case will show.

"And that the said James L. Morehead claims to be assignee of all the said judgments and executions, as will appear by reference to the report of Barna Powell in the original cause.

"And your orator further shows that the said Fisher, Boyd & Bro. are non-residents of this State as well as all the other pretended judgment-creditors of Horner & Johnson, and their debts having been almost, if not entirely satisfied, are claimed nevertheless to be liens on the real estate of your orator and do thereby create clouds upon his title; and ought to be removed.

"Your orator further shows and charges, that the said James L. Morehead in the year 1865 purchased a tract of land, containing one hundred and thirty-eight acres, lying in Wood county, W. Va., from one James Y. Horner, who had purchased the same from the said John W. Horner, after the said judgments had become liens on the land of said John W. Horner; and your orator is informed and believes, and so charges, that by an agreement in writing made between the said James Y. Horner and the said James L. Morehead, it was agreed and provided, that in view of the existence of the said judgment-liens and certain other incumbrances on the said tract of one hundred and thirty-eight acres, that the said James L. Morehead should retain the sum of two thousand four hundred dollars, to secure himself against the said liens, the said agreement bearing date 7th day of September, 1865, and is filed with papers annexed to the report of Barna Powell aforesaid, to which reference is hereby made. And it is further provided in said agreement, that the said Morehead should convey to said J. Y. Horner a lot in the city of Parkersburg, W. Va., on Market street, being lot forty-three, in Stephenson's addition, where the said John W. Horner then resided, to be taken by said James Y. Horner as payment for the said tract of land, and the liens of said judgments also existing or which would attach upon the said lot, in case the title to the same was or should be, in the said John W. Horner; it was further provided in said agreement, that the deed which Morehead was to make to J. Y. Horner should retain a lien to indemnify said Morehead against said judgment liens on said lot, and that by way of further indemnity the said James Y. Horner in the deed which he had made or was about to make to John W. Horner in trust for a tract of forty acres of land in Wood county, W. Va., for

his wife and children a lien against the lands sold to More-head should be retained to indemnify the said Morehead against the incumbrances of said judgments. And your ora-tor further charges, that afterwards on the 6th day of Sep-tember, 1866, the said J. L. Morehead released said J. Y. Horner from all liability that may rest upon him, (Horner) by reason of judgments docketed against John W. Horner in said Wood county, except a lien retained on the said house and lot on Market street in the city of Parkersburg, con-veyed by James Y. Horner, to John W. Horner, trustee for the benefit and protection of the said Morehead; all which will be seen by reference to exhibit filed with the report of Powell aforesaid.

"And your orator further charges, that the said lien, was so retained in a deed by said James Y. Horner to John W. Horner, trustee for said house and lot, bearing date the 18th day of October, 1865, a copy of which will be filed herewith as a part of this amended bill.

"And your orator further charges, that the said James L. Morehead, as your orator is informed and believes, became the assignee of the said judgments against Horner & Johnson, for little or no consideration, with full notice that they had been paid oft and discharged, and that he has fraudulently endeavored thereby to enforce the same against your orator and the said John W. Horner's estate; that the said Horner, (now deceased), declared and showed that the said judgments had been fully paid by your orator and the said Horner, and that if anything really did remain the indemnity which was made by the lien on the said house and lot and the said land, was amply sufficient for whatever such balance, (if any) might be.

"And your orator further shows, that the said More-head having become as he insists the assignee of said judg-ments, can stand in no better right or position, than the said judgment-creditors, and having had payment or satisfaction once he is not entitled to more; and that the security retained by him in the purchase of said one hundred and thirty-eight acres of land was sufficient to satisfy said liens.

"And your orator further charges, that the said John W. Horner, by the article of dissolution filed with the papers in

this cause, took the stock of goods belonging to the firm of Horner & Johnson, and expressly agreed therefor, to pay off the debts of the said firm, of all which the said Morehead had notice before and at the time of the pretended purchase by him of the said judgments; and the said Morehead having secured himself against whatever might be due from said Horner on said judgment, by the provisions made in the said agreements of September 7th, 1865, and September 6th, 1870, he is not entitled to claim more than he paid, (if anything,) for said judgments; and is bound in equity to resort to the liens he expressly contracted for thereby; and that the said Morehead having expressly provided with the Horners for reimbursement or indemnity against the said supposed liens, he is bound to proceed first against the security he has so provided; and particularly so since the said Horner refused to pay the debts of said firm; and the said arrangement between the said Morehead and Horner was subsequent thereto, and your orator charges that upon a fair settlement of accounts after allowing all the proper credits on the said judgment there is nothing due the said Morehead thereon; and that the executions aforesaid should be perpetually enjoined.

"Your orator further represents that since the institution of the said suit by your orator, the said John W. Horner died, and that R. E. Horner has been duly appointed administrator of the estate of John W. Horner.

"And your orator is advised that the said John W. Horner's estate being equally liable for whatever may be justly due, (if anything) on said judgments, after the said Amiss & Loomis account for the said collections, and the said Morehead being as he claims assignee of said judgments; and he having purchased the said tract of one hundred and thirty-eight acres of land, with full knowledge of the liens of said judgments, he the said Morehead, is bound to account with your orator for whatever may be due your orator in settlement of the said liens, growing out of the firm business of Horner & Johnson. And your orator being without relief in the premises, and in order to avoid a multiplicity of suits or proceedings against said Morehead and the said creditors, prays that R. E. Horner, administrator of the estate of John

W. Horner, deceased; M. P. Amiss; George Loomis; James
L. Morehead; E. B. Long and J. C. Long, partners as E. B.
Long & Co.; Samuel Straus, Sleon Hartman, Nathan Hofflin,
and T. W. Goodloe, partners as Straus, Hartman, Hofflin &
Co.; William T. Young, W. K. Carson, and William Bryant,
partners as Young, Carson & Bryant; Jeremiah Fisher, J. J.
Boyd, and Asbury Mc. Boyd, partners as Fisher, Boyd &
Bro.; and Austin Doll, assignee of Fisher, Boyd & Bro.;
Charles F. Taylor, William J. Foster, and John Beatty, part-
ners as Fisher, Foster & Co., be made parties defendants to
this bill, that they may answer the same upon oath. That
the said J. L. Morehead may especially state and discover on
oath, each particular sum of money or other thing he may
have paid or delivered in consideration of the alleged assign-
ment to him of the said liens and claims heretofore set forth,
and represented to be held by him.

"That an account may be taken of the moneys collected by
the said Amiss & Loomis, or either of them, applicable to the said
judgments, or either of them. That an account may be taken
of the credits of the firm of Horner & Johnson, that the [said]
J. L. Morehead may be enjoined from all further enforcement
of the executions in the said judgments against your orator's
estate. That he may be compelled to resort to the indem-
nity secured by him, and that he may be compelled to stand
in the place of the said judgment-creditors only for the actual
sums paid by him for said liens, and that an account may be
taken thereof. And that the said suit of Fisher, Boyd &
Co., now pending in this court for the enforcement of the
lien of their supposed judgment against the estate of Horner
& Johnson may be consolidated with this; and that the
premises being considered that your orator may have such
other and further and general relief in the premises, as to equity
*may seem just*, and as in duty bound he will ever pray, &c.

                              "JOHN B. JOHNSON,
                                   "*By Counsel.*"

At October rules, 1878 of the circuit court of Harrison
county the amended bill was taken for confessed and set for
hearing as to the defendants served. On the 2d day of De-
cember 1878 the circuit court of Harrison county by an
order removed the cause to the county of Wood to be therein

further proceeded in, heard and determined. On the 22d day of January 1879 the parties by their attorneys appeared in the circuit court of Wood county and on motion of the plaintiff, the cause was docketed in that court and thereupon the defendant, Morehead by his counsel moved the court to dismiss the said amended bill of the plaintiff, which motion the court took time to consider. Thereupon the defendants Morehead and M. P. Amiss filed their separate demurrers to said bill and amended bill, and their separate answers to said amended bill, in which demurrer the plaintiff joined, and the plaintiff replied generally to said answers. The ground of the demurrer of said Morehead is that the bill and amended bill are not sufficient in law to entitle the plaintiff to the relief prayed for or to any relief. The ground of the demurrer of said Amiss does not appear. The last named answer of the defendant Morehead is as follows:

" *To the Honorable the Judge of the Circuit Court of Wood County:*

"The separate answer of · James L. Morehead to the amended bill of complaint filed in the cause against Young, Carson & Bryant and others, and now pending in said court:

"This respondent says · that he is advised that . said amended bill was improperly filed, and that the complainant is and was not entitled to file and maintain the same for many . reasons appearing upon the face thereof and the record of said cause, and he moves this honorable court to dismiss the same for said reasons, and because also that there is no equity in said bill.

"And not waiving any benefit of the above objection to said bill or any other that might properly be taken thereto, this respondent for answer thereto refers to his answer to the original now on file, and adopts the same and asks that it may be read with and considered part of this· answer. Respondent does not admit that the proceedings in said cause are correctly set out in said amended bill, but refers to the proceedings therein as the same appears of record for a correct statement thereof.

"Nor does he admit as true what is said in said amended bill about the judgment of Fisher, Boyd & Bro. against Horner & Johnson, but refers to the same and the record of the

chancery cause now pending in this court for the enforcement thereof, for the condition and standing thereof. He denies that said judgments or any of them are fully satisfied as stated in said amended bill, but on the contrary large sums are due this respondent thereon as claimed by him in each of said suits.

"Respondent admits that he claims to be the assignee of the judgments mentioned in this suit, and he now here says that he is such assignee and entitled to the benefit of said judgments and to enforce them. He admits that the plaintiffs in said judgments are non-residents of this State, but he denies that said judgments constitute a claim upon the title of the real estate of complainant. Respondent denies that he purchased land from J. Y. Horner on the 7th September, 1865, as stated in said amended bill, but did purchase said land in 1860, as will appear by reference to the said agreement of 7th September, 1865. Respondent denies that he retained the sum of two thousand four hundred dollars or any part thereof, in his hands of the purchase money of said land as an indemnity against the judgments mentioned in this suit, which will also appear by reference to agreement of September 7, 1865. But it is provided in said agreement that respondent should retain a lien on lot 43 in Parkersburg which was to be conveyed by him to J. Y. Horner; and respondent afterwards did convey the same and retained the lien as provided, and J. Y. Horner subsequently conveyed said lot to said J. W. Horner as trustee for his wife, and retained a similar lien in that deed, copies of each of said deeds are filed herewith as exhibits, marked respectively 1 and 2, as part of this answer. Respondent also files herewith the deed from J. Y. Horner to him, for the one hundred and thirty-eight acres, marked exhibit No. 3, and therewith the agreements between him and said Horner filed in said original cause constitute the entire transaction between him and said Horner in relation to said land. Respondent is advised and believes, and so represents that the said J. W. Horner in his lifetime, as trustee for his wife, sold and conveyed the said lot 43, in Parkersburg, to W. N. Chancellor, and respondent is not advised whether said Chancellor still owns the same or not. It is true as stated in said bill that

respondent released said J. Y. Horner from all liability on account of liens of judgments against J. W. Horner and Horner & Johnson, and said one hundred and thirty-eight acres, except as to the lien retained on lot 43 in Parkersburg. Respondent denies that he became the assignee of said judgments for little or no consideration and after he had notice that they had been paid or nearly so, on the contrary, he gave a full consideration therefor, and was informed at the time he purchased them that they were unpaid to the extent that he now claims and he believes and answers that they were so. He admits that he has tried to enforce the payments of said judgments, but denies all fraud and says that the sums claimed by him on said judgments are justly due him.

"Respondent is advised and so answers, that he is not bound to rely wholly upon said lot for his indemnity against said judgments, nor exhaust that first, but has the right to proceed to enforce said judgments in any manner that the plaintiffs therein might have done had they not assigned to him. Respondent says that the judgment of Taylor, Foster & Co. mentioned in the complainant's original bill in this cause is a judgment against said J. W. Horner alone, and constituted a lien upon said one hundred and thirty-eight acres of land, and the only indemnity respondent has against it is the lien retained by him in his deed to J. Y. Horner for the said lot 43. Said judgment is for two hundred and seventy-two dollars and sixty-six cents, with interest from April 2, 1858, a copy of said judgment is filed herewith marked 'A.'

"He denies that he had any notice of the agreement of dissolution between Horner & Johnson at the time he purchased said judgments, and is informed and so answers that if he had had such notice it could in no way affect him or compel him to resort alone to the said Horner for the payment thereof.

"Respondent denies that he is liable to complainant in any way for anything in the settlement of the partnership accounts of Horner & Johnson.

"Respondent denies that said judgments should be credited with any sums collected by Amiss & Loomis, or either of them on collaterals placed in their hands as such, except

only so much as they may have actually paid over to the plaintiffs in said executions, and all such has already been credited.

"Respondent is unable to state at this late day the exact sums that he paid for said judgments, but paid nearly or quite the face of them. He may have obtained some small discount on some of them by paying ready cash, but he cannot now say how much; said judgments were liens on the one hundred and thirty-eight acres which was very valuable, and amply sufficient for the payment of all of them, and the holders were not willing to discount them much; and he denies that he is not entitled to enforce the said judgments for more than he actually paid, but says he is entitled to enforce them for the full amount remaining unpaid when he purchased them. He was compelled to purchase them to prevent legal proceedings from being commenced to enforce them against his land; and respondent would never have purchased the said judgments, or any of them, had he not been informed and believed that the same constituted liens upon the one hundred and thirty-eight acres of land so purchased by him as aforesaid; and he did not purchase them or know of their existence until he was notified by the attorneys for some of said creditors that they proposed to resort to their lien upon respondent's said land for the satisfaction of said judgments.

"Respondent having fully answered prays that the injunction granted in this cause be dismissed; that the original bill and amended bill may be dismissed, and that he may recover his costs about his defense in this behalf expended.

"JAMES L. MOREHEAD,
"*By C. C. Cole & W. L. Cole, his Counsel.*"

This answer is sworn to.

The deed from James Y. Horner and wife to John W. Horner, trustee for Mary Horner his wife, mentioned in and filed with the answer of said Morehead as an exhibit is dated the 25th day of April, 1865, the consideration is love and affection and one dollar, and it conveys to John W. Horner trustee as aforesaid, "all of a certain house and lot in the town of Parkersburg in Stephenson's addition, and being the same conveyed by S. Smith to James L. Morehead, and sold

by him to J. Y. Horner to have and to hold the same to the party of the second part, in trust for the sole and separate use and benefit of the said Mary Horner, the wife of the said trustee during her natural life free from the debts and liabilities of said trustee husband of said Mary, subject only to the condition, that if there is any judgments against said trustee that will be a lien on the land that the parties of the first part sold to James L. Morehead, that then there is a special lien retained to said Morehead on this house and lot to indemnify him against said judgment liens or any liability that may be against said land. And it is further ———— that if at any time the said Mary Horner, wife of said trustee, should desire to sell said house and lot and invest the proceeds in other real estate, the said trustee shall upon the written request of said Mary, sell and convey said property, in which conveyance said Mary shall join; and the proceeds arising from said sale shall be at once invested in other real estate to be held by said trustee for the separate use and benefit of said Mary free from all liabilities, right or title of said trustee, and upon further trust and confidence that at the death of said Mary Horner, the property herein conveyed or such as may be purchased with the proceeds arising from such sale as herein provided for shall vest in *fee simple* in the children of said Mary by her said husband trustee as aforesaid, now born or to be hereafter born. This deed was acknowledged on the 1st day of May, 1865, admitted to record in the recorder's office of Wood county on the 18th day of October, 1865. The deed from James L. Morehead and wife to James Y. Horner filed with the answer of said Morehead as an exhibit is dated the 8th day of September, 1865. The consideration of this deed on its face is two thousand dollars in hand paid and it conveys to the said James Y. Horner 'all that certain lot or parcel of land situated and being in the city of Parkersburg, in what is known as Stephenson's addition in said town on Market street being one-half of the lot known as lot number 43,' and bounded by metes and bounds stated in the deed. 'Being the same lot conveyed to the said Morehead, by Samuel Smith and Mary his wife and on which J. W. Horner now resides. This deed contains this further covenant and provisions to-wit:

'And the said parties of the first part covenant to, and with the said parties of the second part, that they will warrant generally the property hereby conveyed. Provided however, whereas the property hereby conveyed, was sold to the said Horner to the said Morehead and was accepted by him the said J. Y. Horner as and in part payment to-wit: Of the sum of two thousand dollars of the purchase-money of a tract of land containing one hundred and thirty-eight acres, situated in Wood county, on the Parkersburg and Williamstown road sold by him the said J. Y. Horner to the said Morehead, and which tract of land was conveyed to the said J. Y. Horner by the said J. W. Horner; and whereas, it appearing that there are judgments standing on the records of the court of Wood county, against the said J. W. Horner and the firm of Horner & Johnson of which the said J. W. Horner was a member which so far as the said records disclose are still unsatisfied. Now therefore, it is especially provided that a lien be and is hereby saved and reserved upon said property hereby conveyed, to indemnify him the said Morehead, against *the said judgments* and against any loss or damage that may be occasioned to him the said Morehead, his heirs or assigns, by reason of any prior liens upon said land, so purchased by him from the said J. Y. Horner, founded upon the said judgments or any of them against the said J. W. Horner or the said Horner & Johnson and to compensate him, the said Morehead, so far as may be necessary, and so far as the property hereby conveyed shall avail for the purpose; for any loss to which he may at any time be subjected, by reason of such judgments and the liens thereof, or any of them, said liens hereby reserved to the said Morehead to subsist and continue upon the said property hereby conveyed, until all liability of the said one hundred and thirty acres of land purchased by the said Morehead or the said J. Y. Horner, as aforesaid, to the liens of said judgments or any of them, shall have wholly ceased and been determined."

This deed was acknowledged on the 5th day of October, 1865, and admitted to record in the recorder's office of Wood county on the 18th day of October, 1865.

The deed from James Y. Horner and wife to James L.

Morehead filed with said Morehead's answer as exhibit No. 3 is dated the 7th day of September, 1865. The consideration of this deed upon its face is nine thousand six hundred and sixty dollars and the deed grants to the said Morehead one hundred and thirty-eight acres of land in Wood county in the State of West Virginia, on the east side of the Ohio river and bounded as stated in said deed. This deed specifies that "of the consideration aforesaid, there remains yet to be paid the sum of twenty-four hundred dollars, for which said James L. Morehead has this day executed to the said James Y. Horner his eight several single bills bearing interest from the 1st day of March, 1860, until paid; said single bills being payable simi-annually on the 1st day of March, and September, 1866, 1867, 1868 and 1869. Also in satisfaction of two thousand dollars more of said nine thousand six hundred and sixty dollars of the purchase-money as aforesaid, there remains to be performed the covenants of the said James L. Morehead to convey with covenants of general warranty, one house and lot in the town of Parkersburg aforesaid in the county and State aforesaid, situated on Market street, it being the house and lot purchased by said Morehead of the Rev. Samuel Smith, to the said James Y. Horner. For the payment due; and the performance of the covenants of the said Morehead to convey as aforesaid, a lien is hereby retained upon the property herein conveyed. The said James Y. Horner and Mary A. his wife covenant that they will warrant generally the property hereby conveyed."

The agreements between James Y. Horner and James L. Morehead referred to in his said answer are as follows:

"Agreement made this 7th day of September, 1865, between James Y. Horner, of the county of Harrison and State of West Virginia, of the one part, and James L. Morehead, of the county of Wood and State aforesaid of the other part:

"Whereas, by written contract bearing date on the 3d day of January, 1860, the said Horner did sell to the said Morehead a certain tract or parcel of land situated in the county of Wood and State aforesaid, on the Ohio river, containing one hundred and thirty-eight acres, at the price of seventy dollars per acre, of which part has been heretofore paid, and the residue remains unpaid; and whereas since said contract

was made it has been ascertained that there is a defect in the title to sixty acres, parcel of said land, in this, that said sixty acres was the property of Mrs. Emma G. Jackson, the wife of John J. Jackson, and upon her death descended (subject to the estate by the courtesy of her said husband) upon her heirs-at-law, seven in number, and three of said heirs never having assigned or released their respective shares, the title to three-sevenths of said sixty acres remains outstanding in them, and not having been vested in the said James Y. Horner by deed under which he claims title to the same cannot be transferred and vested in the said Morehead by any deed that the said Horner can now make; and whereas it is agreed that a portion of purchase-money of said land remaining unpaid, shall be now paid by the said Morehead to the said Horner, and that the residue the sum of two thousand dollars shall be retained in the hands of the said Morehead by way of indemnity against the claims of the three heirs or the said Mrs. Jackson, whose shares have never been released; and whereas it has been, since said sale, ascertained that there are judgments upon the records of the court of Wood county against John W. Horner, of whom the said James Y. Horner purchased said land, and against the firm of Horner & Johnson, of which the said John W. Horner was a member, which, as far as the records disclose, remain unsatisfied, and the said Morehead desires some indemnity to be given against the same.    Now, therefore, this agreement witnesseth:

"That the said Morehead pays in hand to the said Horner the sum of seven hundred and sixty-five dollars and thirty-three cents, the receipt whereof is hereby acknowledged, and executes to the said Horner his single bills, eight in number, each for the sum of three hundred dollars, bearing interest from the 1st of March, 1860 till paid, payable on the 1st days of March and September, in the years 1866, 1867, 1868 and 1869, and are dated on the 7th day of September, 1865, the receipt of which said eight single bills is hereby acknowledged by the said Horner.    It is further agreed that of the principal of the said eight single bills, the said Morehead shall retain and hold in his hands the sum of two thousand dollars by way of indemnity against the claims of the said three heirs of the said Mrs. E. G. Jackson, in whom the

title to the said three-sevenths of said sixty acres of land remains outstanding, until it can be determined whether the said Morehead shall be subjected to the loss of any portion of said land, and in case of such loss, to make compensation to said Morehead for such loss according to law, and the right of the parties, but in the meantime the said Morehead agrees to pay the interest on said single bills as follows, to-wit: the interest on each of said single bills as the same would fall due up to the time of its maturity, from the said 1st of March, 1860, at the time when the same so falls due respectively. And it is agreed that the said Horner may, in the deeds of conveyance to be executed by him to the said Morehead for the said land, retain a vendor's lien for the security of the said sums of two thousand four hundred dollars, with interest as aforesaid, which said deed.is to be executed and delivered to the said Morehead within twenty days from the date hereof; and whereas the said Morehead is bound by said contract to convey to said Horner a certain lot of ground in Parkersburg, known as lot No. 43 in Stephenson's addition to the town of Parkersburg, fronting thirty-six feet on Market street, being the same property on which John W. Horner now resides, the said property having been agreed to be taken and accepted by the said Horner in part payment of the price of said land, it is further agreed that in said deed for said lot, which the said Morehead is to execute and deliver for record within ten days from the date hereof, the said Morehead may retain a lien upon the face of said deed to indemnify him against any loss or damage by reason of the judgments aforesaid against the said John W. Horner and Horner & Johnson.

"And by way of further indemnity the said J. Y. Horner agrees to and binds himself to reserve a similar lien in a deed from him to J. W. Horner, in trust for the wife and children of the said J. W. Horner, for forty acres of land situated in the county of Wood, adjoining the land sold to the said Morehead, which said deed reserving said lien the said Horner binds himself to execute and deliver for record within twenty days from date hereof.

"Witness the hands of the parties the day and year first above written.                    "J. Y. HORNER.
                                             "J. L. MOREHEAD."

This agreement was duly admitted to record in the recorder's office of Wood county on the 25th of March, 1871.

"Article of agreement made and entered into this 6th day of September, 1866, by and between James Y. Horner, of Harrison county, West Virginia, of the first part, and James L. Morehead, of the county of Wood and State aforesaid, of the second part, witnesseth:

"That the said Horner, for and in consideration of the sum of fourteen hundred and forty-nine dollars and fifty cents; to him in hand paid by said Morehead, the receipt whereof is hereby acknowledged, hereby releases to said Morehead the lien retained in a certain contract between the parties hereto for the payment of eight single bills for three hundred dollars each, each bearing date on the 7th day of September, 1865, which said contract is recorded in deed book No. 24, pages 689, &c., of Wood county; and the said Morehead hereby releases said Horner from all liability that may rest upon him, 'Horner,' by reason of judgments docketed against John W. Horner in said Wood county, except a lien retained on a certain house and lot on Market street conveyed by James Y. Horner to John W. Horner, trustee, which said lien was and is retained for the benefit and protection of said Morehead. The said Morehead also releases said Horner from all obligation except the warranty from Jackson to Horner and himself, Morehead hereby taking Jackson in lieu of Horner as it regards the price paid by said Horner to Jackson forty-eight dollars and sixty-six cents per acre; and this agreement is understood to be a settlement of the matter between said Horner and Morehead in full as to the land in every shape. One of the single bills above mentioned is already paid, and the residue, seven single bills, are hereby canceled and returned to said Morehead.

"Witness the following signatures and seals:

"J. Y. HORNER,     [Seal].
"J. L. MOREHEAD.   [Seal]."

This agreement was duly admitted to record in the recorder's office of Wood county March the 29th, 1871.

The Exhibit "A" filed with the answer of said Morehead is a judgment of the county court of Wood county rendered

in favor of the firm of *Taylor, Foster & Co.* v. *J. W. Horner* for two hundred and seventy-two dollars and sixty-six cents, debt with interest from the 2d day of April, 1858, till paid and costs of suit.

The answer of Amiss & Loomis to said amended bill is joint and separate and in substance the same as their answer to the original bill. It denies all the material allegations of the amended bill, so far as the same in any manner relate to them. They quote from the report of said Commissioner, Barna Powell, these words: "It is my opinion that under all the circumstances the executions against Horner & Johnson in favor of the defendant, in this bill, (the original bill) should in equity be returned satisfied." To this conclusion of the commissioner the said Amiss & Loomis except.

The answer to said bill and amended bill of E. B. Long & Co., Straus, Hartman, Hofflin & Co., Young, Carson & Bryant, Fisher, Boyd & Bro., Austin Doll, assignee of Fisher, Boyd & Bro., Taylor, Foster & Co., which is joint and separate, admits the recovery of the several judgments against the said Horner & Johnson in the bill and amended bill mentioned in favor of the several parties and for the several amounts respectively in the complainant's bill mentioned; and they say that they assigned the said judgments to their co-defendant, Morehead, for a valuable consideration long before the institution of the suit; and allege that they have no personal knowledge of the various other allegations in the complainant's bill, but refer to the answer of their co-defendant, Morehead, which they believe contains a correct and true answer to the various allegations of the complainant's bill; and they adopt the said answer of Morehead as their own.

Commissioner Barna Powell in his report hereinbefore mentioned finds the judgment of E. B. Long & Co. against Horner & Johnson to stand as follows: Judgment confirmed at August term of Wood county court for 1858 for two hundred and seventy-eight dollars and fifty-three cents, with interest on one hundred and thirty-nine dollars and twenty-six cents from May 12, 1858, and on one hundred and thirty-nine dollars and twenty-six cents from June 12, 1858; plaintiff's costs to date, nine dollars and eighty-three cents;

credit by cash paid by J. W. Horner September 11, 1865, one hundred and twenty-five dollars; credit by over-paying another execution September 12, 1865, thirty-two dollars· and seventy-two cents. Also the judgment of *Straus, Hartman, Hofflin & Co.* v. *Horner & Johnson* as follows: Judgment October term, 1858, of Wood county court for three hundred and thirty-six dollars and sixty-three cents, with interest from April 15, 1858; plaintiff's costs to date, eight dollars and sixty-seven cents; credit by cash September 12, 1865, by J. W. Horner. Also the judgment of *Young, Carson & Bryant* v. *Horner & Johnson* as follows: Judgment at the November term, 1858, of the Wood county court for three hundred and thirty-six dollars and sixty-three cents, with interest from April 15, 1858; plaintiff's costs, twelve dollars and thirty-four cents. He further says, that Horner paid Amiss five hundred dollars in September, 1865, from which the above credits are probably taken. He also reports that it does not appear that George Loomis is in any manner liable as attorney or otherwise either to the plaintiff or either of the defendants, he having been simply a law partner of M. P. Amiss, and the management of these causes the receipt of all moneys pertaining to them was by said M. P. Amiss.

But the said commissioner as to said three last named judgments and executions thereon further reports among other things as follows: "In view of the facts disclosed by the evidence, I am clearly of the opinion that a sufficient amount of goods was seized by Sheriff Harwood in 1858 to satisfy the claims and judgments against Horner & Johnson, had they been properly cared for and disposed of in a prudent and business-like manner; and as executions in favor of these defendants were at the time in the sheriff's hands they, as well as the sheriff were *de facto* trustees for the proper disposition of the property. It is my opinion, that under all the circumstances the executions against Horner & Johnson in favor of the defendants in this bill should in equity be returned satisfied." To this conclusion of said commissioner it seems exceptions were filed by defendants and perhaps in some other respects which does not clearly appear by the record as before us. And said commissioner

in his said report, further says: "I am specially requested by Horner to report upon another branch of the case, viz.: J. L. Morehead, one of the defendants, claims, and it is conceded by all parties, that he is the beneficiary party in what may, if anything, be due on these judgments. Morehead purchased land formerly owned by J. W. Horner, upon which there were liens created by law in favor of these defendants. When Morehead purchased the claims he was indemnified against these liens by a security in shape of a lien reserved by J. Y. Horner on a house and lot conveyed by John W. Horner, trustee for his wife and children. These judgments according to Morehead's evidence were purchased by him for less than their face, but he declined to say what he did pay for them. Whether Morehead has a right in equity to purchase these judgments and compel Horner to pay more for them than it cost Morehead to release the liens on his land, if the defendants are entitled to recover at all, is a legal question which I leave to the court to decide."

A large quantity of evidence is filed in the cause, but the result of it and the evidence is referred to in the opinion of the Court as far as deemed necessary.

On the 16th day of April 1879 the circuit court of the said county of Wood made and entered a decree in the cause as follows:

"This cause came on to be finally heard this day upon the original and amended bills and the exhibits therewith filed; the answers of the several defendants to the original bill, and exhibits filed therewith; the demurrer to amended bill, and also the answer of all the defendants to the amended bill and exhibits with said answers, except the defendants R. E. Horner and George Loomis, who have failed to answer, and the process having been duly served upon them upon the bill taken for confessed, as to them, upon the orders and decrees heretofore made herein, and upon the report of the commissioner, and the exceptions of the defendants thereto, and the testimony taken in said cause, and upon the motion of defendants to dissolve the amended bill, and upon the mandate of the Supreme Court of Appeals, and was argued by counsel, upon consideration whereof the court is of opinion to

and does hereby overrule the demurrer to the said amended bill, and the motion of defendants to dismiss the same; the court is further of opinion that the complainant is not entitled to the relief prayed for in said bill and amended bill, and is of opinion to and does sustain the exceptions of the defendant to the report of said commissioner. It is therefore ordered that the said bill and amended bill be and the same are hereby dismissed, and that the defendants, except R. E. Horner, do recover of the complainants their costs by them about their defense in this behalf expended.

"And by consent of the defendants the sum of thirty-two dollars and thirty-seven cents, mentioned in the commissioner's report, as a proper credit upon the execution of E. B. Long & Co. against Horner & Johnson as of the 12th day of September, 1865, is to be credited thereon as of that date," &c., &c.

From and to the last named decree and the decree of the 22d day of January 1879, in the circuit court of Wood county the plaintiff upon this petition and assignment of error therein obtained from this Court an appeal and *supersedeas.*

*John A. Hutchinson* for appellant cited the following authorities:   4 Cl. & Fin. 207; 6 Eng. Com. Law, 642; 32 N. Y. 501; 56 *Id.* 402; 6 *Id.* 204; 67 *Id.* 95; 2 Lead. Cas. Eq. 277; 23 Smith (Pa.) 489; 9 Barr. 498; 2 M. & S. 195; 2 Wms. (Ver.) 93; 2 Barb. ch. 627; *Id.* 338; 6 Gratt. 310; 2 Lead. Cas. Eq. 1345; 1 Lead. Cas. Eq. 147; 10 Clarke 164; 6 Bing. 306; 35 Mich. 42; 15 Wisc. 270; 6 Gratt. 526; 25 Gratt. 211; 17 N. J. Eq. 198; 2 John. Chy. 561; Brandt on Sureties § 378; 1 Pa. St. 361; 7 Watts 20; 11 W. Va. 673; 10 Gratt. 164; 4 Ves. 824.

*W. L. Cole* for appellee.

HAYMOND, JUDGE, announced the opinion of the Court:

From the pleadings and evidence in this cause it must be taken and considered, as against defendant Morehead and his assignors of the judgments, that the judgments in the bill and amended bills mentioned, the collection of which by executions was enjoined by the injunction awarded in

the cause, were liens upon the tract of land situated in Wood county in the State of West Virginia, sold by the defendant, John W. Horner, to his father, James Y. Horner, at the time of such sale and also at the time of the conveyance of the same to James Y. Horner, and that they continued to be liens on said land in favor of said judgment-creditors after the said sale and conveyance thereof to said James Y. Horner and at the time of and after both the sale and conveyance of said land by said James Y. Horner to the defendant, Morehead, and still continue to be liens on said land unless such liens have in some way been released or extinguished in whole or in part. The sale of the said land was made by said James Y. Horner to said Morehead on the 3d day of January, 1860, and the deed of conveyance for the land so sold was made by said James Y. Horner and wife granting the land to said Morehead on the 7th day of September, 1865, was acknowledged on the 25th of the same month and year, and was admitted to record on the 18th day of October, 1865. This deed states the consideration thereof to be nine thousand six hundred and sixty dollars, and that of the consideration there remains yet to be paid the sum of two thousand four hundred dollars, for which said Morehead on that day executed to said James Y. Horner his eight single bills for three hundred dollars each, bearing interest from the 1st day of March, 1860, until paid, they being payable semi-annually, on the 1st days of March and September, 1866, 1867, 1868 and 1869; that also in satisfaction of two thousand dollars more of said nine thousand six hundred and sixty dollars of purchase-money there remains to be performed the covenant of said Morehead to convey with covenants of general warranty to said James Y. Horner a house and lot in Parkersburg in the county aforesaid on Market street purchased by said Morehead of Rev. Samuel Smith. For the payment of the said two thousand four hundred dollars of purchase-money and the performance of the said covenant of said Morehead to convey, as aforesaid a lien is retained on the face of the deed. The said deed from James Y. Horner to said Morehead contains a covenant of general warranty. As seen in the statement on the 7th day of September, 1865, the day of the date of said deed from

said James Y. Horner to the said Morehead, the said James Y. Horner and Morehead made an agreement in writing with each other in relation to said land and a part of the purchase-money therefor, &c. In this agreement it is stated and agreed as follows :

"A portion of the purchase-money of said land remaining unpaid, shall be now paid by the said Morehead to the said Horner, and that of the residue the sum of two thousand dollars shall be retained in the hands of the said Morehead by way of indemnity against the claims of the said three heirs of the said Mrs. Jackson, whose shares have never been released; and whereas it has been, since said sale, ascertained that there are judgments upon the records of the court of Wood county against John W. Horner, of whom the said James Y. Horner purchased said land, and against the firm of Horner & Johnson, of which the said John W. Horner was a member which as far as the records disclose, remain unsatisfied, and the said Morehead desires some indemnity to be given against the same. Now, therefore, this agreement witnesseth, that the said Morehead pays in hand to the said Horner, the sum of seven hundred and sixty-five dollars and thirty-three cents the receipt whereof is hereby acknowledged, and executes to the said Horner his single bills eight in number, each for the sum of three hundred dollars bearing interest from the 1st of March, 1860, till paid, payable on the 1st days of March and September, in the years 1866, 1867, 1868 and 1869, and all dated on this 7th day of September, 1865, the receipt of which said eight single bills is hereby acknowledged by the said Horner. It is further agreed that of the principal of the said eight single bills, the said Morehead shall retain and hold in his hands the sum of two thousand dollars by way of indemnity against the claims of the three heirs of the said Mrs. E. G. Jackson, in whom the title to the said three-sevenths of said sixty acres of land remains outstanding, until it can be determined whether the said Morehead shall be subjected to the loss of any portion of said land, and in case of such loss to make compensation to said Morehead for such loss according to law and the right of the parties, but in the meantime the said Morehead agrees to pay the interest on said single bills as

follows, to-wit, the interest on each of said single bills as the same would fall due up to the time of its maturity, from the said 1st of March, 1860, at the time when the same falls due respectively."

This agreement then provides that said James Y. Horner may retain a vendor's lien in the deed on the land for the security of said two thousand four hundred dollars with interest as aforesaid and that the deed shall be executed and delivered to said Morehead within twenty days. And the said agreement then provides as follows:

"And whereas the said Morehead is bound by said contract to convey to said Horner a certain lot of ground in Parkersburg, known as lot No. 43 in Stephenson's addition to the town of Parkersburg, fronting thirty-six feet on Market street, being the same property on which John W. Horner now resides, the said property having been agreed to be taken and accepted by the said Horner in part payment of the price of said land, it is further agreed that in said deed for said lot, which the said Morehead is to execute and deliver for record within ten days from the date hereof the said Morehead may retain a lien upon the face of said deed to indemnify him against any loss or damage by reason of the judgments aforesaid against the said John W. Horner and Horner & Johnson. And by way of further indemnity the said J. Y. Horner agrees and binds himself to reserve a similar lien in a deed from him to J. W. Horner, in trust for the wife and children of the said J. W. Horner, for forty acres of land situated in the county of Wood adjoining the land sold to the said Morehead, which said deed reserving said lien the said Horner binds himself to execute and deliver for record within twenty days from the date hereof."

By an agreement in writing made by and between the said James Y. Horner and said Morehead dated the 6th day of September, 1866, and set out in statement of the case, it was agreed and stipulated, that the said James Y. Horner, in consideration of the sum of one thousand four hundred and forty-nine dollars and fifty cents to him in hand paid by said Morehead, released to said Morehead the lien retained in the said contract between them for the payment of the said eight single bills for three hundred dollars each dated

the 7th day of September, 1865 ; and the said Morehead released said James Y. Horner from all liability that may rest upon him, Horner, by reason of judgments docketed against John W. Horner in said Wood county except a lien retained on the house and lot on Market street conveyed by James Y. Horner to John W. Horner trustee, which said lien was and is retained for the benefit and protection of said Morehead; the said Morehead also released the said Horner from all obligation except the warranty from Jackson to Horner as it regards the price paid by said Horner to Jackson—forty-eight dollars and sixty-six cents per acre, and it is expressly provided further in said last named agreement that it was understood to be a settlement of the matter between said Horner and Morehead in full as to the land in every shape. And the last clause of this agreement states that "one of the single bills above mentioned is already paid, and the residue, seven single bills, are hereby canceled and returned to said Morehead."

Shortly after the date of the last named agreement between the said John Y. Horner and said Morehead, in the fall of 1866, the said Morehead purchased the judgments in the bills mentioned and took assignments thereof to himself from their respective owners for a valuable consideration, and as he says in his answer to the original bill to protect himself from a chancery suit or suits, &c., and from that time the said Morehead became the owner of said judgments he being at that time and since the owner of said one hundred and thirty-eight acres of land on which said judgments were liens. The deed from said James Y. Horner of date the 25th day of April, 1865, to John W. Horner as trustee for his wife and children as we have seen retains a lien thereon to indemnify said Morehead against judgment-liens or any liability that may be against said land. The deed from said Morehead and wife to the said James Y. Horner for the said house and lot dated the 8th day of September, 1865, saves and reserves a lien on said house and lot to indemnify him against "said judgments and against any loss or damage that may be occasioned to him (Morehead), his heirs or assigns by reason of any prior liens upon said land so purchased by him from said J. Y. Horner, founded upon the said judgments

against the said J. W. Horner or the said Horner & Johnson, and to compensate the said Morehead, so far as may be necessary and so far as said house and lot should avail for the purpose.

It appears that sometime prior to the 3d day of September 1857 the said John W. Horner and the plaintiff, J. B. Johnson entered into partnership in the business of merchandising in the town of Parkersburg under the firm name of Horner & Johnson, and that on the day and year last aforesaid the said John W. Horner and the plaintiff by an agreement in writing signed and sealed by each of them dissolved the said partnership in the following terms: "The said Horner to take the entire stock of goods of every kind and description, and in consideration thereof, he (Horner) to pay all the debts and liabilities of every character and description that might be against the firm of Horner & Johnson; and the said Horner to give to said Johnson one thousand dollars to cover the amount of money said Johnson paid into the firm, and also his interest in and to the profits of the firm." The said one thousand dollars was to be paid to said Johnson as a payment on a piece of land sold on the day and year last aforesaid to said Johnson by said Horner. It further appears that said John W. Horner from and after said dissolution took exclusive possession of the effects of said firm as his own and proceeded to dispose of part of them under and by virtue of said contract of dissolution of partnership, and that under and by virtue of said contract of dissolution of partnership the said firm of Horner & Johnson became and was from the date thereof dissolved and ceased to do business in the purchase and sale of goods, &c. It further appears that the said dissolution of said firm and partnership of Horner & Johnson took place in the year prior to the rendition of any of the judgments in the said bills mentioned and that in the summer of 1858, most probably in the month of July, the sheriff of Wood county by virtue of certain executions against Horner & Johnson and John W. Horner alone in his hands levied upon the store-goods unsold by Horner which formerly belonged to said firm of Horner & Johnson, but which then belonged to said John W. Horner, and sold the same; and at that time it may well be inferred from what appears that the said John W. Horner ceased merchandising. It may be in-

ferred from what appears that the plaintiffs in said judgments before they assigned them to said Morehead knew that the firm of Horner & Johnson had ceased to carry on the mercantile business, and I think it sufficiently appears that they had knowledge of the dissolution of said partnership of Horner & Johnson and the same may be said as to said Morehead as to said firm of Horner & Johnson having ceased to do business before he purchased said land and at the time the said judgments were assigned to him.

Morehead in his answer to the amended bill denies that he had any notice of the agreement of dissolution between Horner & Johnson and the pleadings and evidence in the cause as before us it seems to me fail to show satisfactorily that he had actual notice of said agreement of dissolution when said judgments were assigned to him. It appears that said judgments were assigned to said Morehead by the owners thereof for a valuable consideration, but each for a consideration less than the amount thereof, but how much less does not appear. No execution upon any of the judgments in said bills mentioned appear to have been levied upon the store-goods of the said J. W. Horner as alleged in the said bills or either of them and the said Horner & Johnson from the evidence seem to have received credits for all payments on said judgments to which they are entitled except the credit of thirty-two dollars and thirty-seven cents consented to by the parties in the decree appealed from, and except also any credits they may be entitled to on the judgment of Fisher, Boyd & Co. arising from collections made by Loomis & Amiss or Amiss attorneys upon the claims placed in their hands by J. W. Horner to be applied to the claims of Fisher, Boyd & Bro. or otherwise in the bills in this cause mentioned, but that matter is in progress of settlement and adjudication if not already adjudicated in another cause of Fisher, Boyd & Bro. against Horner & Johnson which was pending in the circuit court of Wood county before and at the time Fisher, Boyd & Bro. were made parties to this suit, and for this reason I do not see now from anything appearing that it is proper to consider them in this cause, and they must be left to be determined in the said cause of Fisher, Boyd & Co. against said Horner & Johnson.

The record and proceedings of that cause are not made a part of the original or amended bills in this cause and this cause was not heard in the court below upon or with the bill and proceedings in the said cause of Fisher, Boyd & Bro. in the court below ; nor is a copy of the bill and proceedings in said last named cause a part of the record of the case as far as it has been submitted to us.

No sufficient reason now appears to this Court why the last named cause should be consolidated with this cause as prayed in plaintiff's amended bill, though perhaps it may be proper to hear them together hereafter.

So far as appears in this cause all the executions ever issued upon any of the judgments in the original bill in this cause mentioned were returned by the officer "No property found" except the last executions issued shortly before the plaintiff's said injunction was obtained in this cause upon his original bill, and which was levied upon the plaintiff's cattle as in the bills mentioned, and which levy was the immediate cause of the obtaining of said injunction and the filing of said original bill. From the pleadings and evidence it must also be taken that the defendant, Morehead after the judgments in the original bill mentioned were assigned to him caused the executions which were levied upon the plaintiff's cattle as alleged in said original bill to be issued on said judgments against the said Horner & Johnson and to be levied upon the plaintiff's said cattle and that said Morehead is seeking to make the amount of said last named judgments out of the individual property of the plaintiff.

The first error assigned by the appellant is that, " it was error to docket the cause in the circuit court of Wood county on the 22d day of January, 1879, there not appearing to have been an order made by the circuit court of Harrison county, transferring the cause to the former court." This assignment of error is not well taken as it now appears that there was such an order of transfer made in the cause by the circuit court of Harrison county on the 2d day of December, 1878.

The appellant's second assignment of error is that " it was error to entertain the defendants' exceptions to commissioner's report. The exceptions should have been deemed waived,

not having been filed until eight years and more after the report had been filed." It does not appear that the appellant made any objection in the court below to the filing of said exceptions or to the consideration of said exceptions by the court for any cause and for this reason obviously, if for no other, the objection in this Court to the filing of said exceptions or the consideration thereof cannot now be entertained by this Court.

The appellant's third assignment of error is that "it was error to dismiss the bill and amended bill, thereby denying any relief to the petitioner." In support of this assignment of error the appellant's counsel maintain as a proposition of law, that the said contract by which appellant sold out his interest in the partnership to his co-partner and in which his said co-partner John W. Horner in consideration of said interest agreed to pay all the firm debts and liabilities established as between them the relation of principal and surety in a court of equity making said John W. Horner the principal debtor for the payment of the firm debts and appellant merely his surety for the payment thereof.

In the case of *Oakley* v. *Pasheller*, Clark & Finnelly's R. 206, the syllabus as reported is: "R. and S. partners in trade, executed in the year 1811, four joint and several bonds to O., to secure repayment of ten thousand pounds sterling, advanced to them by his acceptance and payment of four bills of exchange, amounting together to that sum. Two of the bonds were made payable in 1817 and two in 1818. S. died early in 1815, and his executors agreed with R. and with K., who was then in partnership with R., in place of S., that R. and K., in consideration of the outstanding debts and effects of the former partnership, would pay certain sums to the executors, and would also indemnify S.'s estate against certain schedule debts including these bonds. No notice of that agreement was given to O. He continued to receive interest on the bonds from the new firm as well after as before they became due; and the annual accounts which they furnished him contained an account of the dividends due to him on seventeen thousand pounds sterling stock, which he lent to the new firm. From O.'s correspondence with that firm in 1820, it appeared that he had, in 1817, given them

three years further time for payment of the bonds, and that in 1820, he gave twelve months further time. These indulgences were granted without consent of S.'s executors. In 1823 O. took from R. and K. a collateral security for payment of the debt expressly reserving his right against S.'s estate in respect of the bonds, but concealing that arrangement from S.'s executors. In 1829, O.'s executors to whom he had assigned the bonds before his death, applied for payment of them to S.'s executors, who thereupon filed their bill, praying that it might be declared that their testator's estate was discharged from the bonds. *Held*, that the indulgence granted by O. for payment of the bonds in 1817, without consent of S.'s executors, had the effect of discharging his estate."

In the case of *Eldad Smith* v. *Allen Shelden et als.* 35 Michigan 42, the 2d and 3d section of the syllabus as reported is as follows:

"2. When on the dissolution of a co-partnership one partner purchases the interest of his co-partners, agreeing to pay all the partnership liabilities, the partner thus retiring may still be held liable by the creditors, but if he is compelled to pay he is entitled to indemnity from the other partner and is therefore as to such other partner a surety merely upon the partnership obligation.

"3. A surety is defined as a person who being liable to pay a debt or perform an obligation, is entitled, if it is enforced against him, to be indemnified by some other person who ought himself to have made payment or performance before the surety was compelled to do so; and the relation is fixed entirely by the arrangement and equities between the debtors or obligors and may or may not be known to the creditors."

In the case of *George Colgrove* v. *Charles Tallman*, 67 N. Y. 95, the syllabus as reported is as follows: "Where one of two co-partners purchases the interest of the other in the partnership property, and assumes and agrees to pay the partnership debts, as to such debts the former becomes in equity the principal debtor and the latter a surety; and this relationship a firm creditor having notice of the agreement is bound to observe. When a creditor having such notice, is

requested by the partner, who thus became surety, to collect his claim, and he. refuses or neglects so to do, if at the time of the request, the principal was solvent and able to pay, but thereafter becomes insolvent the surety is discharged."

See also upon this subject and as supporting the principle decided in the above cited cases : *Frow, Jacobs & Co.'s estate*, 73 Pa. State R. by R. Smith 459, 466 ; *Millerd et al.* v. *Thorn*, 56 N. Y. by Sickles 402 ; *Savage et al.* v. *Putnam et al.* 32 N. Y. 501 ; *Stuyvesant* v. *Hall et als.* 2 Barbour's Chy. R. 151 ; *Wilkes et als.* v. *Harper et als.* *Id.* 338, Eng. Com. Law Reports ; *Aflalo Fourdrinier, &c.* p. 90 ; *Ætna Insurance Company* v. *Wires et al.*, 2 Williams (Vermont) 93 ; *Wilson* v. *Lloyd*, 16 Equity Cases, Law Reports 1873, vol. 2d, 1st part ; White and Tudor's Lea. Cases in Eq. 4th Ed. 277, 281, 282 ; same vol. 2d part 2d 1345 ; same vol. I. part 1, 147.

In the case of *Hupp* v. *Hupp*, 6 Gratt. 310, the syllabus is : "H. & N. are merchants and partners. H. sells out to M. ; and the new firm undertakes to pay the debts of the first. H. becomes indebted to the new firm, for which he executes his bond with two sureties ; and this bond is assigned for value to A. The new firm afterwards fails and the partners are insolvent, leaving debts of the old firm unpaid to a larger amount than the bond of H. and H. pays them. *Held* : H. is entitled in equity, to set-off against his bond in the hands of the assignee, the debts of the old concern of H. & N., which M. & N. were bound to pay and which H. paid."

In the case of *Buchanan* v. *Clark et als.*, 10 Gratt. 164 the 1st section of the syllabus is: "1. G., B. and K. were principal obligors in a bond. B. and K. put money in the hands of G. to pay the bond; and he bound himself to pay it, but failed to do so, and became insolvent. A judgment was recovered on the bond against the three, and B. paid it. After the judgment G. conveyed land to S. to secure a debt due to him and another debt due to C. Upon a bill by B. and K. against S. and C. to subject the land conveyed in the deed to S. to satisfy the debt B. had paid, S. stated in his answer that prior to the judgment he held the bond of G., B. and K. and that he had delivered it up upon receiving the bond of G. with the deed to secure it; but there was no proof of this. C. in his answer, stated that he had before the

judgment bought one-half of the land from G. and made payments upon it; and had afterwards given it up and taken the bond of G. for the amount, and taken the deed of trust to secure it. *Held:* 1. It was competent for G., B. and K. to contend, that as between themselves, G. should be principal and B. and K. his securities; and that this had been done. 2. That as between B. and K. and G., the former were entitled to be subrogated to the lien of the judgment-creditor upon the land; and that they were equally entitled against purchasers from G. who did not show a better equity. 3. That the equity set up by S. was not final; and that the equity of C., if he had any, was merged in the deed of trust." In this case Grant, Keys and Buchanan entered into partnership for the purchase of cattle for the eastern market and amongst other purchases they bought the cattle of James Cox, for which they executed to him their bond for one thousand three hundred dollars. That the cattle purchased by them were sold; and thereafter Grant was supplied with money arising from the sales, for the purpose of paying the bond to Cox, as well as all other partnership debts; being thus supplied with funds, he made an agreement in writing with Keys and Buchanan, by which he bound himself to pay the unpaid partnership debts. Grant not paying the debt to Cox an action was brought by Cox in the circuit court of Washington county against him and Keys and Buchanan on said bond; and judgment was recovered thereon by Cox in the spring of 1840, against all the parties. Grant became insolvent; and Keys and Buchanan executed a forthcoming bond, on which execution was awarded at the fall term of the court. At the time the judgment was rendered in the spring of 1840 Grant owned several tracts of land. In September, 1840, Grant executed a deed by which he conveyed a large portion of his said land owned by him at the date of the judgment to Francis Smith in trust to secure a debt of five hundred dollars due to Smith, and to secure David C. Clark the payment of a debt of one thousand six hundred and six dollars, for which John B. Clark was surety. It appears that a *fieri facias* was issued upon the judgment awarding execution on the forthcoming bond, upon which Buchanan paid seven hundred and forty-six dollars and eight cents, on the 28th

day of December, 1840. That in March, 1841, a *ca. sa.* was issued upon which Keys and Buchanan were taken in custody, and that Buchanan made an arrangement with Gibson which satisfied the balance due on the judgment, amounting to seven hundred and fifty-seven dollars and twenty-five cents. In December, 1840, Keys and Buchanan filed their bill in the circuit court of Washington county against Grant and others including the trustee in said trust-deed for the purpose of subjecting all of the said lands, which the bill alleged had been conveyed in trust as aforesaid, to satisfy said judgment of *Cox* v. *Grant, Keys & Buchanan.* From what appears it would seem that at the filing of the bill Keys & Buchanan had not paid the judgment, but in their bill they alleged that they would be compelled to pay it. In the bill among other things they alleged that said judgment was a lien upon said lands, and that they were entitled to be substituted to the rights of the judgment-creditor Cox, and to subject the lands for the amount they shall be compelled to pay, &c. The case was carried to the court of appeals of Virginia and Judge Allen in delivering the opinion of the court at pp. 172–3 says: "Conceding the judgment to be prior in point of time to the deed of trust, it is contended that the debt was the individual debt of each of the partners; that in paying it the complainants have merely paid their own debt, and such payment gave them no right to the application of the principle of subrogation as against a subsequent incumbrance. As between the partners and the creditor they were all equally bound; and no understanding and agreement as between themselves, could change that relation so as to impair his rights. But there was nothing in that relation which would prevent the parties as between themselves, from assuming the relation of principal and securities. Grant agreed to pay the debt upon being furnished with the means; the funds were supplied, but he failed to apply them as he agreed to do. He admitted that he owed the debt himself, and by the memorandum signed by him, dated the 16th of May, 1840, he bound himself to settle the unpaid debts of the firm contracted for cattle during the year 1839, and the costs incurred in collecting them. As between themselves, he stood in the position of

principal primarily liable for the debt, and his co-partners as his sureties. After they had complied with their engagement by supplying Grant with the funds to pay off the debts, upon his undertaking to discharge them, the debts became his, and they should have been discharged by him; for in substance though not in form the money was due from him alone. If the property had remained the property of Grant, there can be no doubt that a court of equity, in view of his express undertaking to treat the debt as his own and discharge his co-partners therefrom, would have held him liable as principal debtor, and substituted them, if compelled to pay his debt, to the lien of the creditors judgment on his property. And this equity of the complainants could not be impaired by a subsequent transaction of Grant with third persons, to which the complainants were strangers. Although the judgment is in fact extinguished by payment, yet it is kept alive in contemplation of equity for the benefit of the surety. *Bank United States* v. *Winston executor*, 2 Brock R. 254; *Enders* v. *Brune*, 4 Randolph 438; *Powell* v. *White*, 11 Leigh 309: *McClung* v. *Beirne*, 10 Leigh 394; *Robinson* v. *Sherman*, 2 Gratt. 179; *Leake* v. *Ferguson*, 2 Gratt. 420; *Watts* v. *Kinney*, 3 Leigh 272. I do not think, therefore, that there is anything in the objection that the debt when contracted was a partnership debt, and that with respect to the creditor it retained its original character. As between themselves they occupied the relation of principal and securities; and the judgment being prior to the deed of trust, they are entitled to priority over it, unless the creditors secured by the deed can show a superior equity."

Under the authorities and upon principle it is clear that the said proposition of the counsel for the appellant is correct. As regards the rights of the surety against his principal, he is plainly entitled to expect, not only that the principal shall save him from harm, by exempting him from payment of the debt, or if that has not been done, by reimbursing him when he has paid it; but moreover that the principal shall allow him the benefit of the means of payment which the latter has placed in the hands or within the power of the creditor. The surety has therefore a right to enforce against his principal all securities which the latter has given his creditor; for the

purpose of reimbursement to the surety, if payment has been made; and it is not in the mouth of the creditor to object in the one case or the other to the surety's standing precisely in his shoes, on the contrary the creditor, in relation to such securities may be said with truth to be trustee of the surety, and if he acts unfaithfully, he not only fails in his duty as such, but violates the rights of the surety as against his principal. If therefore, he releases or perverts, or defeats such securities, he exempts the surety to the extent of the loss thereby sustained. *Humphrey* v. *Hitt*, 6 Gratt. 525, 526, opin. of Judge Baldwin.

In 2d vol. White & Tudor's Lea. Ca. in Equity, part 1, 279 this is laid down: "It is accordingly well settled throughout the greater part of the United States, that payment by a surety is *prima facie* a purchase, entitling him to stand in the place of the creditor as it regards the debt and every means or remedy by which it is secured; *Hayes* v. *Ward*, 4 Johnson Ch. 123."

In *McCormick* v. *Irwin*, 11 Casey 117 Judge Strong said, "The familiar doctrine of subrogation is, that where one has been compelled to pay a debt which ought to have been paid by another, he is entitled to a cession of all the remedies which the creditor possessed against that other. To the creditor, both may have been equally liable; but if, as between themselves, there is a superior obligation resting on the one to pay the debt the other after paying it, may use the creditor's security to obtain reimbursement. * * * The doctrine does not depend upon priority, nor is it confined to cases of strict suretyship. It is a mode which equity adopts to compel the ultimate discharge of the debt by him who in good conscience ought to pay it, and to relieve him where none but the creditor could ask to pay. To effect this the latter is allowed to take the place of the creditor, and make use of all the creditor's securities as if they were his own.

In White & Tudor's Lea. Ca. vol. 2 part 2 p. 1345, it is said: "Hence, when land, subject to a judgment, is conveyed with a covenant of warranty or against incumbrances, the grantee may not only require that the judgment should be deducted from the purchase-money, but may file a bill to have the amount set off in a suit for a distinct cause of ac-

tion. *Terry* v. *Wooding*, 2 Patton & Heath 178. See *Ragsdale* v. *Hagy*, 9 Gratt. 419."

In *Irick* v. *Black*, 2 C. E. Green N. J. Eq. 189, it was held: "1. A surety who has paid the debt of the principal, is at once subrogated to all the rights, remedies and securities of the creditor. 2. Where the debt has become payable a surety may file a bill to compel payment of the principal, in order that he may be relieved from responsibility."

In the case at bar it is manifest that the appellant after said judgments were rendered against the said firm as security for the payment of said judgment-debts had a right to file his bill in equity, to subject said one hundred and thirty-eight acres of land to the payment of said judgment-debts and to his relief as such surety from the payment thereof in the hands of said John W. Horner, said James Y. Horner or said Morehead at any time prior to the purchase and assignment of said judgments to the said Morehead because said John W. Horner was in fact the principal debtor *quoad* said judgment-debts and said judgments were liens upon said land in the hands of said John W. Horner, and also in the hands of said J. Y. Horner and also in the hands of said Morehead, and said judgment-liens upon said land, so far as appears by the record before us, could at any time have been inforced by the judgment-creditors. It is clear from Morehead's answers and from what otherwise appears that Morehead before he received his deed for said land from said J. Y. Horner, not only had constructive notice that said judgments were liens upon said lands but in fact had actual notice thereof.

The surety's right to subrogation does not grow out of the contract with the creditor, but from his relation with the principal which renders it incumbent on the latter to exonerate the surety. Whenever one is liable in person or estate to a charge which ought to be borne primarily by another person or his estate, the person first named will have the equity of the surety, and be entitled to the securities and remedies of a creditor as a means of carrying that equity into effect; *Wilkes* v. *Harper*, 2 Barb. Chy. 338; White & Tudor's Lea. Ca. in Eq. vol. 2 part 1 pp. 282, 283.

It does not appear in this case that said John W. Horner

at the dates of the rendition of said judgments or afterwards was the owner of any lands other than said one hundred and thirty-eight acres.  Before and at the time said John W. Horner sold said one hundred and thirty-eight acres of land, as between said John W. Horner and the appellant as his surety, the said John W. Horner was the principal debtor and as such primarily liable for the payment of the said judgments and the said one hundred and thirty-eight acres of land was also primarily liable for the satisfaction thereof. *Cherry* v. *Monro et als.*, 2 Barb. Chy. Prac. 618; *Buchanan* v. *Clark et als.*, 10 Gratt. 164 & 173.  And the said one hundred and thirty-eight acres of land continued so primarily liable in the hands of said J. Y. Horner and said Morehead whether they or either of them had actual notice that the appellant was in fact only a surety or not, for in such a case, however it may be in some other cases, the purchaser is held to be put on enquiry and to have at least constructive notice of the surety's equity.  If this were not so the principal judgment-debtor upon whose land a judgment is a lien could by a sale and conveyance of his land in many cases, at his will throw the entire burthen of payment of the debt upon his surety without remedy for his reimbursement.  With reference to this equity Judge Allen in the case last cited says:  "And this equity of the complainants could not be impaired by a subsequent transaction of Grant (the principal debtor) with third persons, to which the complainants (the sureties) were strangers."  See also the case of *Wright, use of Ensley* v. *Knepper, Sahl & Leckey*, 1 Pa. State R. by Barr 361.

In the case of *Koons* v. *Hartman*, 7 Watts. Pa. R. 20, it was held that:  "If the plaintiff in a judgment became the owner of the land upon which that judgment is a lien, the lien thereby becomes extinct by operation of law; and no subsequent sale of the land by the sheriff, will vest a title in the purchaser."  In this case Judge Kennedy delivered the opinion of the court and at page twenty-four he says:  "Besides he must be viewed as having held the land, from the moment he became the owner of it, entirely free from all lien on account of the judgment; because, being the owner (as it most clearly appears from the evidence) of the judg-

ment, when he bought the land from Snell, the defendant in the judgment, the lien of the judgment thereby became extinct through operation of law; there being no agreement made or intention manifested at the time, to continue it for any purpose. And, indeed, having become the absolute owner of the land, and being so also of the judgment, at the same time, it is not very easy to conceive why the lien should have continued to exist longer; because it would be idle, if not perfectly absurd and ridiculous, for a creditor to wish that his own property should be bound for the payment of a debt owing to himself; it is even difficult, if not impossible, to conceive how this could be. The lien of the judgment, then having thus become extinct, it cannot be imagined that the subsequent transfer of either the judgment or the land should revive it again, so as to affect the purchase of the latter."

In the case of *Wright* v. *Knepper, Sahl & Leckey*, 1 Penn. State R. by Barr page 361, the syllabus of this case as reported is: "The purchaser of a lot of ground on which there is the lien of a judgment against two or more persons, one of whom is surety, by purchasing and taking an assignment of the judgment discharges the surety *pro tanto*." In the court below this was a *scire facias* to revive judgment, &c., in which Enoch Wright, for the use of Michael Ensley, the plaintiff, in error, was the plaintiff, and William W. Knepper, Leopold Sahl and William Leckey were defendants. All the facts of the case as reported were these: Enoch Wright obtained an amicable judgment by confession against the defendants for six hundred and eighteen dollars and eighty-four cents, which on the 7th of July, 1841, was entered of record, in Allegheny county, and became a lien on a lot of ground situate in Allegheny city, and owned by Leopold Sahl. On the 16th day of December, 1842, Leopold Sahl for the consideration of four hundred and sixty dollars conveyed this lot to Michael Ensley. On the 17th of June, 1844, Enoch Wright for a *bona fide* consideration assigned the judgment to Michael Ensley, without recourse and subject to a credit of two hundred dollars, paid 26th of July, 1841, and a further credit of interest on the whole amount to April 1, 1841. It was found on the part of Wil-

liam Leckey (who alone made defense to the *scire facias*) that .he was only a surety and Leopold Sahl the principal." Judge Rogers in delivering the opinion of the court said: " The judgment on which suit was brought was a lien on a lot now owned by Michael Ensley. Ensley became the purchaser of the judgment subsequently, and now seeks to enforce payment by means of a *scire facias* against William Leckey, the surety. This raises the question, whether the purchaser of a lot bound by a judgment against these persons, in which one of the debtors is a surety, by purchasing and taking an assignment of the judgment, discharges the surety *pro tanto*. We shall but arrive at a correct conclusion, by considering the situation of the surety before the assignment. If the creditor levies his debt by sale of the premises on which the judgment is a lien, the surety is discharged from the debt, and this so far as the surety is concerned, would be the duty of the creditor, a duty, which would be enforced by a court of equity, who would compel him in the first instance to go against the land. But although we have no such power in this State, yet we have adopted to the fullest extent the principle, that equity considers that done which ought to be done. Again if the creditor levies the debt from the surety, the latter has a right to be substituted to all the securities of the principal, and by this means to an indemnity against the sale of real property bound by the judgment. Nor has the purchaser any just right to complain as he had constructive, if not actual notice of the lien, and of course purchased subject to it. He takes the property encumbered with the same equities as the original owner, and as regards him it is settled; the surety upon payment of the debt is entitled to substitution against the principal.

" In *Koons* v. *Hartman,* 7 Watts 20, the general principle is ruled, that if the plaintiffs in the judgment become the owners of the land upon which the judgment is a lien, the lien becomes extinct by operation of law. Of the benefit of this principle to the extent of the value of the land, the surety cannot be deprived. But by purchasing the judgment and obtaining control of it, the plaintiff seeks to buy the debt from the surety, and thereby exempts the lot, of which

he has reluctantly become the owner, from the lien of the judgment. The writ was issued against all the defendants, but issue is joined, and the trial had with the surety alone; and as the jury have found the value of the lot to be equal to the amount of the judgment, we are of opinion the assignee is not entitled," &c.

While I do not concur fully with all that is said by the judge who delivered the opinion of the court in the last named case still I concur and agree with the most that is said in it which is applicable to the question under consideration and to that extent I construe it to be in accordance with the principles decided in the case of *Buchanan* v. *Clark et als.*, 10 Gratt. 170, 172, 173. I am therefore of opinion that as Morehead before and at the time he purchased and took assignments of said judgments from the owners thereof held and owned said one hundred and thirty-eight acres of land, and as said judgments were liens on said land in his hands for the payment and satisfaction of the amounts of said judgments *quoad* the appellant before and at the time he purchased and received said assignments of said several judgments and in relief and discharge of the appellant therefrom who was in fact a surety only, for the payment of said judgments while said John W. Horner was the principal debtor therein, that when the said Morehead purchased and took assignments of said several judgments from the owners thereof the appellant became and was discharged from said judgments and the amounts due thereon and the payment thereof *pro tanto*, that is to say to the extent of the value of said one hundred and thirty-eight acres of land on the 30th day of October, 1866, when he purchased and received the last of said assignments of said several judgments from the owners thereof, the first purchase being made on the 16th day of September, 1866, as stated by Morehead. The usual time is the time of the assignment of the judgment, but as there were several judgments assigned in this case I have fixed the date of the last assignment for convenience, as I don't see any party can be prejudiced thereby. And if the value of said one hundred and thirty-eight acres of land at said time is found to be equal to or in excess of the aggregate amount due on said several judgments including all

proper interest and costs after deducting the proper credits, at the time last aforesaid, then the appellant is entitled to be discharged from said several judgments and from the payment of each and every of said judgments and every part thereof.

But the discharge of appellant in whole or part as the case may be from liability upon the said judgments for the reasons aforesaid does not discharge the said judgments and their several liens as to the real estate of said John W. Horner, deceased, other than the said one hundred and thirty-eight acres of land if any there be in so far as the same remains unpaid after deducting all proper credits.

The injunction as prayed for in the original bill is against the judgment in favor of said firm of E. B. Long & Co. against the said firm of Horner & Johnson confessed at the August term of the county court of Wood county for two hundred and seventy-eight dollars and fifty-three cents with interest on one hundred and thirty-nine dollars and twenty-six cents from May 12, 1858, and on one hundred and thirty-nine dollars and twenty-six cents from June 12, 1858, and costs of suit and the said judgment of said firm of Straus, Hartman, Hofflin & Co. rendered at the October term 1858 of said county court for three hundred and thirty-six dollars and sixty-three cents and costs of suit against said firm of Horner & Johnson and the said judgment of the said firm of Young, Carson & Bryant against said firm of Horner & Johnson rendered by said county court at the November term 1858 for sixty-five dollars with interest thereon from November 12, 1858, and costs of suit.

The commissioner credits the first named judgment with cash paid by J. W. Horner, September 11, 1865, one hundred and twenty-five dollars, which credit I think is correct, and also credits the same " by overpaying another execution, September 12, 1865." I see no evidence to authorize this credit, but as the defendants in the final decree rendered by the circuit court in this cause consented to the same it is doubtless correct. The second judgment above named the commissioner credits with cash, September 12, 1865, by J. W. Horner one hundred and fifty dollars. This credit is I think correct. The commissioner is I think mistaken when he

says in his report that "a credit of forty-eight dollars and seventy-four cents appears on the judgment of E. B. Long & Co., &c." . There appears to have been another judgment of said E. B. Long & Co., rendered in the circuit court of Wood county at the June term 1858 for one hundred and thirty-seven dollars and eighty-nine cents with interest from the 12th day of April, 1858, which is subject to a credit of forty-eight dollars and thirty-six cents and thirty-six dollars and seventy-six cents which is the balance after deducting sheriff's fees and commissions of the forty dollars and seventy cents which Sheriff Harwood speaks of in his evidence at page 5, printed record. But Sheriff Harwood in his evidence does not speak of having applied or paid any part of the proceeds of the sale of J. W. Horner's store-goods on the said judgment of E. B. Long & Co. against said firm of Horner & Johnson in the county court of Wood county at the August term 1858, for two hundred and seventy-eight dollars and fifty-three cents with interest, &c. The said judgment of E. B. Long & Co. against said Horner & Johnson rendered in the circuit court of Wood county for one hundred and thirty-seven dollars and eighty-nine cents with interest, &c., is not embraced in this suit. I do not concur in the conclusion of the commissioner stated in his said report "that under all the circumstances the executions against Horner & Johnson in favor of the defendants in this bill should in equity be returned satisfied." I don't think the evidence before the commissioner justified him in his said conclusion. There was then no error in the circuit court in not confirming said report as a whole and sustaining exceptions to it, as to the erroneous conclusions of the commissioner in the respects I have indicated.

As to the questions made and discussed by counsel in the cause touching the matter of indemnity mentioned in the plaintiff's bill it is unnecessary to intimate any opinion, now first because all the parties interested in the questions directly arising upon said alleged indemnity to Morehead for loss, &c., on account of judgments are not before the Court, and I think it would perhaps be improper to unnecessarily pass upon said alleged indemnity or its effects in their absence. Second. From what appears in the cause I think the value

of the said one hundred and thirty-eight acres of land is greater in amount by several thousand dollars than the amount of said judgments after deducting all proper credits and indeed of all the judgments mentioned in the cause and if that is so the consideration of said indemnity in this cause is wholly immaterial and unnecessary. It is true that there is a possibility of my being mistaken in this respect, but from what appears in the cause it does not seem to be in any wise probable. Taylor, Foster & Co. are not parties to the original bill but they are made parties by the amended bill. The judgment of Taylor, Foster & Co. Morehead in his answer says is not against the said firm of Horner & Johnson, but is against John W. Horner alone. There is no official copy of the judgment in the record as before us but from what does appear in the record I think it most probable that this judgment is against John W. Horner alone and not against the appellant and if this should not be made to appear otherwise after this cause is remanded to the circuit court, the cause should be dismissed as to that judgment, but if it should be made to appear that Taylor, Foster & Co.'s judgment for their debt is against the appellant as well as John W. Horner then the appellant is entitled to the same relief against it as I have before ascertained he is entitled to against the judgments enjoined in the injunction allowed upon the original bill.

As before stated the record of the suit of Fisher, Boyd & Bro. against Horner & Johnson in the amended bill in this cause mentioned is not before us and this cause was not heard upon or with that case and I therefore cannot now see and determine that it would be proper for the Court to consolidate that cause with this, but however that may be I think it would be proper to hear that cause with this after this cause is remanded to the circuit court.

The injunction prayed for in the original bill is, " that in the meantime the sheriff of Wood county and the said aforenamed defendants and all others interested, their agents and attorneys, be enjoined and restrained from all further proceedings on the last mentioned judgments; and that the injunction may be perpetuated." The order of injunction is not contained in the record as before us, but if the order of in-

junction is as prayed for it should be modified at the final hearing before the circuit court substantially so as to enjoin and prohibit the sale of the appellant's property levied upon as in the bill mentioned, and the collection of said judgments or either of them in whole or in part, as may be proper, from the appellant, his executors, administrators, heirs or assigns by any legal process or suit or proceeding whatever issued upon or founded upon said judgments or either of them.  And said injunction thus modified may be extended to any other judgment or judgments mentioned in the amended bill filed in this cause if at the hearing it shall appear proper to do so.

There were some other questions discussed by counsel in this cause, which under the views I have taken have become immaterial and unnecessary to be determined in this cause and I therefore express no opinion upon them.

For the foregoing reasons I am of opinion that there is no error in the decree rendered in this cause by the circuit court of Wood county on the 22d day of January, 1879, and the same must therefore be affirmed but that there is error in the decree rendered in this cause by the circuit court of the county of Wood on the 16th day of April, 1879, and that the same must be reversed in so far as the said circuit court in its said decree declared it to be its "opinion that the complainant is not entitled to the relief prayed for in said bill and amended bill," and also in so far as the said circuit court in and by its said decree ordered that the said bill and amended bill be dismissed and that defendants except R. E. Horner recover of the complainants their costs about their defense in this suit expended, and that appellee James L. Morehead must pay to the appellant John B. Johnson his costs in this Court about the prosecution of his appeal and *supersedeas* expended.  And this Court proceeding to render such decree as the said circuit court should have rendered it is adjudged, ordered and decreed that this cause be remanded to the said circuit court with instructions to cause the same to be referred to a commissioner to ascertain and report the amount of each of the judgments in the original bill mentioned, further proceedings on which were enjoined by injunction heretofore allowed in this cause, including interest

and proper costs, after deducting all proper payments and credits on the 30th day of October, 1866, and also to ascertain and report as of October 30, 1866, the value of the tract of one hundred and thirty-eight acres of land in the amended bill in this cause mentioned, and conveyed to said James L. Morehead by James Y. Horner and wife by deed dated the 7th day of September, 1865, which deed or a copy thereof is filed with the answer of said Morehead to the plaintiff's amended bill as an exhibit marked No. 3. And the said circuit court may extend and enlarge such order of reference so as to include therein any other judgments in the plaintiff's amended bill filed in this cause, if it shall seem to it proper so to do. And for such other and further proceedings to be had in this cause in said circuit court as are in accordance with the principles settled in this opinion and further according to the rules and principles governing courts of equity.

JUDGES JOHNSON AND GREEN CONCURRED.

DECREES AFFIRMED IN PART AND REVERSED IN PART.

CAUSE REMANDED.

# WHEELING.

